JOHN F. BAUM (SBN 148366)
jbaum@hkemploymentlaw.com
CHINA WESTFALL (SBN 300982)
cwestfall@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
456 Montgomery Street, Suite 2200
San Francisco, CA 94104-1255
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendant
VITAS HEALTHCARE CORPORATION OF CALIFORNIA



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE STATE OF CALIFORNIA, ex rel ALMEA LUIS,<br><br>Plaintiffs,<br><br>vs.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,<br><br>Defendants. | Case No.<br><br>[Alameda Superior Court Case No.: RG17851533]<br><br>**DECLARATION OF CHINA WESTFALL IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. § 1441 (A)(B); 28 U.S.C. § 1332**<br><br>[Filed Concurrently with Civil Cover Sheet; Notice of Removal; Certificate of Interested Parties; and Declarations of Craig Pritchard and Dean Robertson] |
| ALMEA LUIS,<br><br>Plaintiff,<br><br>vs.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,<br><br>Defendants. | Complaint Filed: March 3, 2017 |

I, China Westfall, do hereby state and declare as follows:

1. I am an attorney at law duly admitted to practice before the courts of the State of California and before this Court. I am an associate with the law firm of Hirschfeld Kraemer LLP, and counsel of record for Defendant VITAS HEALTHCARE CORPORATION OF CALIFORNIA ("Defendant") in the above-captioned matter. The facts set forth in this Declaration are within my own personal knowledge, and if called as a witness, I could and would competently so testify.

2. On March 3, 2017, Plaintiff Almea Luis ("Plaintiff") filed a Complaint in the Superior Court of the State of California, in and for Alameda County, entitled *The State of California, Ex Rel Almea Luis v. Vitas Healthcare Corporation Of California, et al,* Case No. RG17851533 (hereinafter "State Court Action"). This matter was filed under seal, while the State of California determined whether it would intervene pursuant to the False Claims Act. The State of California declined to intervene and ordered the Complaint to be unsealed and served.

3. On February 5, 2020, Plaintiff served Defendant Vitas Healthcare Corporation of California's agent for service of process a copy of the complaint. Defendant Vitas Health Services of California, Inc. has not been served with the summons or complaint. A true and correct copy of all process, pleadings, and orders served on Defendant in the State Court Action are attached hereto as **Exhibit A**.

4. On March 5, 2020, Defendant filed an Answer in the State Court Action. A true and correct copy of Defendant Vitas Healthcare Corporation of California's Answer to Complaint is attached hereto as **Exhibit B**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 6th day of March, 2020 in San Francisco, California.

China Westfall

China Westfall

# Exhibit A

CSC

NJH / ALL
Transmittal Number: 21098568
Date Processed: 02/10/2020

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Dean Robertson Esq.<br>Vitas Healthcare Corporation<br>201 S Biscayne Blvd<br>Ste 400<br>Miami, FL 33131-4324 |
| **Electronic copy provided to:** | Rena Damas |

| | |
|---|---|
| **Entity:** | Vitas Healthcare Corporation of California<br>Entity ID Number 1628509 |
| **Entity Served:** | Vitas Healthcare Corporation of California |
| **Title of Action:** | The State of California vs. Vitas Healthcare Corporation of California |
| **Document(s) Type:** | Notice |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Alameda County Superior Court, CA |
| **Case/Reference No:** | RG17851533 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/06/2020 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Jennifer S. Gregory<br>916-621-1823 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

XAVIER BECERRA
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
SARALYN M. ANG-OLSON
Senior Assistant Attorney General
VINCENT DICARLO
Supervising Deputy Attorney General
JENNIFER S. GREGORY, State Bar No. 228593
Deputy Attorney General
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
Telephone: (916) 621-1823
Fax: (916) 274-2929
E-mail: Jennifer.Gregory@doj.ca.gov

*Attorneys for Plaintiff State of California*

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| **STATE OF CALIFORNIA, *ex rel.* ALMEA LUIS,**<br>Plaintiffs,<br>**v.**<br>**VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,**<br>Defendants. | Case No. RG1781533<br>**STATE OF CALIFORNIA'S NOTICE OF ELECTION TO DECLINE INTERVENTION** |

Pursuant to the California False Claims Act, Government Code section 12652, subdivision (c)(6)(B), the State of California ("California"), by and through its counsel, Xavier Becerra, Attorney General, and Jennifer S. Gregory, Deputy Attorney General, respectfully notifies the Court of its decision to decline intervention in the above-captioned action.

Although California declines to intervene, California requests that should either the *qui tam* Plaintiff or any of the Defendants propose that this action be dismissed, settled, or otherwise discontinued, this Court solicit California's written consent before ruling or granting its approval.

Pursuant to Government Code section 12652(f)(1), California also requests that, should this case continue, the parties serve copies of all pleadings, motions, and appeals subsequently filed in this action upon California, and California further reserves the right to order any deposition transcripts and to intervene in the action for good cause shown at a later date, and/or to seek the dismissal of the *qui tam* Plaintiff's action or claims. California also requests that it be served with all notices of appeal.

Finally, California requests the *qui tam* Plaintiff's Complaint, any amended Complaints, this Notice, and the attached proposed Order be unsealed. California also requests that all other materials in the Court's file (including, but not limited to, any hearing transcripts, applications for an extension of time in which to intervene or for any other reason) remain under seal and not be made public or served on *qui tam* Plaintiff or Defendants because, in discussing the content and extent of the California's investigation, such papers are provided by law to the Court alone for the sole purpose of evaluating whether the seal and time for making an election to intervene should be extended.

A proposed Order accompanies this Notice.

Dated: December 26, 2019

Respectfully submitted,

XAVIER BECERRA
Attorney General of California

JENNIFER S. GREGORY
Deputy Attorney General
*Attorneys for Plaintiff State of California*

Courtesy Copy

*14102439*

XAVIER BECERRA
Attorney General of California
GERALD A. ENGLER
Chief Assistant Attorney General
SARALYN M. ANG-OLSON
Senior Assistant Attorney General
VINCENT DICARLO
Supervising Deputy Attorney General
JENNIFER S. GREGORY, State Bar No. 228593
Deputy Attorney General
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
Telephone: (916) 621-1823
Fax: (916) 274-2929
E-mail: Jennifer.Gregory@doj.ca.gov

*Attorneys for Plaintiff State of California*

FILED
ALAMEDA COUNTY
JAN 2 7 2020
CLERK OF THE SUPERIOR COURT
By ________ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ALAMEDA

| | |
|---|---|
| STATE OF CALIFORNIA, *ex rel.* ALMEA LUIS,<br>Plaintiffs,<br>v.<br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,<br>Defendants. | Case No. RG17851533<br>~~[PROPOSED]~~ ORDER RE: STATE OF CALIFORNIA'S AMENDED NOTICE OF ELECTION TO DECLINE INTERVENTION |

The State of California ("California"), having declined to intervene in this action, and pursuant to California's False Claims Act, the Court rules as follows.

IT IS HEREBY ORDERED that:

1. All current contents of the Court's file in this action shall remain under seal and not be made public or served upon *qui tam* Plaintiff or the Defendants, except for the following documents: (1) *qui tam* Plaintiff's Complaint; (2) the summons, if any; (3) the Case Management Order; and, (4) this Order, which are hereby unsealed.

2. The *qui tam* Plaintiff shall serve the Complaint upon the Defendants.

3. The *qui tam* Plaintiff shall serve this Order and the accompanying Notice of Election to Decline Intervention upon the Defendants after service of the Complaint.

4. The seal shall be lifted as to all other matters occurring in this action after the date of this Order.

5. The parties shall serve all pleadings, motions, and appeals filed in this action, including supporting memoranda, upon California.

6. All orders of this Court shall be sent to California.

7. California may order any deposition transcripts, intervene at a later date for good cause shown, or move to dismiss *qui tam* Plaintiff's Complaint or claims.

8. Should the *qui tam* Plaintiff or any Defendant propose that this action be dismissed, settled, or otherwise discontinued, the Court will provide California with notice and an opportunity to be heard before ruling or granting its approval.

**IT IS SO ORDERED.**

Dated: 1/27/20

JUDGE OF THE SUPERIOR COURT
**NOËL WISE**

180 Grand Avenue, Suite 1380

Oakland, CA 94612

CERTIFIED MAIL

7019 0700 0001 9746 2711

Vitas Healthcare Corporation of California
Care of: corporation Services Company
2710 Gateway Oak Drive
Suite 150N
Sacramento, CA 95833

CSC

# Notice of Service of Process

null / ALL
Transmittal Number: 21097313
Date Processed: 02/10/2020

| | |
|---|---|
| **Primary Contact:** | Dean Robertson Esq.<br>Vitas Healthcare Corporation<br>201 S Biscayne Blvd<br>Ste 400<br>Miami, FL 33131-4324 |
| **Electronic copy provided to:** | Rena Damas |
| **Entity:** | Vitas Healthcare Corporation of California<br>Entity ID Number 1628509 |
| **Entity Served:** | Vitas Healthcare Corporation of California |
| **Title of Action:** | The State of California vs. Vitas Healthcare Corporation of California |
| **Document(s) Type:** | Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Alameda County Superior Court, CA |
| **Case/Reference No:** | RG17851533 |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/05/2020 |
| **Answer or Appearance Due:** | Other/NA |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Brian Schwartz<br>510-444-9300 |

**Notes:**
The document matches the original as it was received. All pages served are included in the image.

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
251 Little Falls Drive, Wilmington, Delaware 19808-1674 (888) 690-2882 | sop@cscglobal.com

# CONFIDENTIAL

MC-060

ATTORNEY (*Name, state bar number, and address*):
Bryan Schwartz (SBN 209903), Logan Talbot (SBN 300591)
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, CA 94612
TELEPHONE NO.: (510) 444-9300 FAX NO. (*Optional*): (510) 444-9301
E-MAIL ADDRESS (*Optional*): bryan@bryanschwartzlaw.com
ATTORNEY FOR: ☑ PLAINTIFF ☐ OTHER (*specify*):

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY
MAR - 3 2017
CLERK OF THE SUPERIOR COURT
By Lanette Buffin, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: Rene C. Davidson Courthouse

PLAINTIFF: [UNDER SEAL]

DEFENDANT: [UNDER SEAL]

CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION

CASE NUMBER: RG17851533

**INSTRUCTIONS: This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).**

**This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.**

**You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location.**

Seal to expire on (*date*):
05/02/2017
**UNLESS:**
(1) Motion to extend time is pending; or
(2) Extended by court order

1. The document to which this cover sheet is affixed is:
   a. ☐ Complaint for damages for violation of the False Claims Act
   b. ☑ *Civil Case Cover Sheet* (form 982.2(b)(1))
   c. ☐ Motion for an extension of time to intervene
   d. ☐ Affidavit or other document in support of the motion for an extension of time
   e. ☐ Order extending time to intervene (*specify date order expires*):
   f. ☐ Other order (*describe*):

   g. ☐ Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. ☐ Other (*describe*):

2. This *Confidential Cover Sheet* and the attached document must each be separately file-stamped by the clerk of the court.

03/03/2017
Date: [redacted]



Form Adopted for Mandatory Use
Judicial Council of California
MC-060 [Rev. January 1, 2007]

CONFIDENTIAL COVER SHEET
FALSE CLAIMS ACTION

Gov. Code, § 12652(c);
Cal. Rules of Court, rules 2.570-2.573
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Bryan Schwartz (SBN 209903); Logan Talbot (SBN 300591), Bryan Schwartz Law<br>Kristen Sagafi (SBN 222249), Tycko & Zavafeei LLP<br>Bryan Schwartz Law, 1330 Broadway, Suite 1630, Oakland, CA 94612<br>Tycko & Zavareei LLP, 483 Ninth Street, Suite 200, Oakland CA 94607<br>TELEPHONE NO.: (510) 444-9300 FAX NO.: (510)444-9301<br>ATTORNEY FOR (Name): Almea Luis | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: Rene C. Davidson Courthouse | |
| CASE NAME:<br>State of California, ex rel. Almea Luis v. VITAS Healthcare Corp., et al. | |

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [✓] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (*not specified above*) (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought (*check all that apply*): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [✓] punitive
4. Number of causes of action (*specify*): Fraud under CIFPA, Ins. Code 1871.7 and CFCA, Cal. Gov. Code 12651
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (*You may use form CM-015.*)

Date: 03/02/2017

Bryan Schwartz
(TYPE OR PRINT NAME) ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.





American LegalNet, Inc.
www.FormsWorkflow.com

**CONFIDENTIAL** MC-060

| ATTORNEY (Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Bryan Schwartz (SBN 209903), Logan Talbot (SBN 300591)<br>BRYAN SCHWARTZ LAW<br>1330 Broadway, Suite 1630<br>Oakland, CA 94612<br>TELEPHONE NO.: (510) 444-9300 FAX NO. (Optional): (510) 444-9301<br>E-MAIL ADDRESS (Optional): bryan@bryanschwartzlaw.com<br>ATTORNEY FOR: [✓] PLAINTIFF [ ] OTHER (specify): | ENDORSED FILED<br>ALAMEDA COUNTY<br>MAR - 3 2017<br>CLERK OF THE SUPERIOR COURT<br>By Lanette Buffin, Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 1225 Fallon Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland, CA 94612<br>BRANCH NAME: Rene C. Davidson Courthouse | |
| PLAINTIFF: [UNDER SEAL]<br>DEFENDANT: [UNDER SEAL] | |
| **CONFIDENTIAL COVER SHEET–FALSE CLAIMS ACTION** | CASE NUMBER: 17851533 |

| | |
|---|---|
| **INSTRUCTIONS: This civil action is brought under the False Claims Act, Government Code section 12650 et seq. The documents filed in this case are under seal and are confidential pursuant to Government Code section 12652(c).**<br><br>**This Confidential Cover Sheet must be affixed to the caption page of the complaint and to any other paper filed in this case until the seal is lifted.**<br><br>**You should check with the court to determine whether papers filed in False Claims Act cases must be filed at a particular location.** | Seal to expire on (*date*):<br>05/02/2017<br>**UNLESS:**<br>(1) Motion to extend time is pending; or<br>(2) Extended by court order |

1. The document to which this cover sheet is affixed is:
   a. [✓] Complaint for damages for violation of the False Claims Act
   b. [ ] *Civil Case Cover Sheet* (form 982.2(b)(1))
   c. [ ] Motion for an extension of time to intervene
   d. [ ] Affidavit or other document in support of the motion for an extension of time
   e. [ ] Order extending time to intervene *(specify date order expires)*:
   f. [ ] Other order *(describe)*:
   g. [ ] Notice from the Attorney General of additional prosecuting authority that may have access to the file
   h. [ ] Other *(describe)*:

2. This *Confidential Cover Sheet* and the attached document must each be separately file-stamped by the clerk of the court.

Date: 03/03/2017 [redacted]

Bryan J. Schwartz (SBN 209903)
Logan T. Talbot (SBN 300591)
BRYAN SCHWARTZ LAW
1330 Broadway, Suite 1630
Oakland, CA 94612
Tel: 510-444-9300
Fax: 510-444-9301
bryan@bryanschwartzlaw.com
talbot@bryanchwartzlaw.com

Kristen L. Sagafi (SBN 222249)
TYCKO & ZAVAREEI
483 Ninth Street, Suite 200
Oakland, CA 94607
Tel: 510-254-6808
Fax: 202-973-0950
ksagafi@tzlegal.com

*Attorneys for* Relator-Plaintiff

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF ALAMEDA – UNLIMITED CIVIL CASE**

THE STATE OF CALIFORNIA, ex rel ALMEA LUIS,

Plaintiffs,

vs.

VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.
Defendants,

and

ALMEA LUIS,

Plaintiff,

vs.

VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.

Defendants.

Case No.:

**COMPLAINT FOR MONEY DAMAGES, CIVIL PENALTIES, DECLARATORY AND INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL**

1. **VIOLATION OF THE CALIFORNIA INSURANCE FRAUD PROTECTION ACT, CAL. INS. CODE § 1871.7**
2. **INJUNCTIVE RELIEF, CAL. INS. CODE § 1871.7**
3. **VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CAL. GOV. CODE § 12651(a)(1)**
4. **VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CAL. GOV. CODE § 12651(a)(2)**
5. **VIOLATION OF THE CALIFORNIA FALSE CLAIMS ACT, CAL. GOV. CODE § 12651(a)(8)**
6. **WHISTLEBLOWER RETALIATION IN VIOLATION OF CAL. LAB. CODE §1102.5**
7. **RETALIATION IN VIOLATION OF CAL. HEALTH & SAF. CODE §1278.5**

8. RETALIATION UNDER CAL. INS. CODE §1871.7(K)

9. RETALIATION UNDER CAL. GOV. CODE §12653

## FILED IN CAMERA PURSUANT TO INS. CODE § 1871.7(e)(2) AND CAL. GOV. CODE § 12652(c)(2)

Relator-Plaintiff Almea Luis, on behalf of herself and the State of California, complains against Defendants, VITAS Healthcare Corporation and VITAS Health Services of California (collectively, "VITAS"), as follows:

## PRELIMINARY STATEMENT

1. This whistleblower and retaliation action is brought on behalf of Relator-Plaintiff and all Californians against Defendants VITAS for committing fraud against California's Medi-Cal program and Californians with private insurers and retaliating against Relator-Plaintiff after she complained of VITAS's fraudulent activities to VITAS management. On behalf of California and its residents, Relator-Plaintiff seeks an order and judgment requiring VITAS to disgorge its unlawful profits and pay all statutory penalties, attorneys' fees and costs, and all other relief, including declaratory and injunctive relief, available under the law. In addition to these remedies, in her individual retaliation action, Relator-Plaintiff seeks backpay and frontpay, along with interest and compensatory and punitive damages, in addition to statutory penalties, attorney's fees and costs, and other relief available under the law.

2. Relator-Plaintiff brings this whistleblower action on behalf of herself and all Californians pursuant to the California False Claims Act (Cal. Gov. Code §§ 12650 *et seq.*) and California's Insurance Fraud Protection Act. (Cal. Ins. Code § 1871.7.)

3. Relator-Plaintiff also states claims pursuant to the California Labor Code § 1102.5, Health and Safety Code § 1278.5, Insurance Code §1871.7(k), and Government Code §12653 against VITAS for engaging in adverse employment actions against Relator-Plaintiff shortly after she complained to management about fraudulent admissions and insurance billing practices.

4. California's Medi-Cal program is a crucial safety net for Californians who are unable to afford healthcare. Designed to provide essential care for California's growing indigent population, Medi-Cal funds are already stretched thin. Too many times, Medi-Cal has been subject to fraud and abuse by healthcare providers who have put profits above the public good. Funds that have been set aside to provide healthcare to the neediest among Californians have been diverted away because of false billing schemes. These fraudulent schemes have threatened to diminish the quality of care, unnecessarily burdened taxpayers, and degraded the medical profession. This action invokes

California's robust whistleblower statutes to stop VITAS from continuing its fraudulent practices in the hospice and palliative care industry in California.

5. Hospice companies like VITAS are entitled to receive Medi-Cal and private insurance dollars only for hospice services provided to patients who are "terminally ill." For Medi-Cal, an individual is "terminally ill" if he or she has a medical prognosis of six months or less to live if the individual's illness runs its normal course. 22 C.C.R. § 51180.2. For mandatory private insurance coverage of hospice care for someone "terminally ill," the threshold is one year to live. Cal. Health & Safety Code § 1746. Electing to undergo hospice care is a critical and very personal decision for an individual because the patient is electing to cease further curative care for his or her illness.

6. Relator-Plaintiff Ms. Luis alleges that VITAS submitted or caused the submission of false claims to Medi-Cal and private insurance by admitting patients who were not eligible to receive hospice and palliative care (instead of curative care) because the patients did not have a life expectancy of six months or less if their illnesses ran their normal course. VITAS also submitted or caused to be submitted fraudulent records and statements in support of their false claims for payment from Medi-Cal and private insurance.

7. All of Ms. Luis's allegations are based on personal knowledge she gained during her work for VITAS, as follows: after three years of working as a case manager at a non-profit organization that assisted hospice patients, Ms. Luis started a job with VITAS as an admissions nurse in 2009 and immediately observed that her fellow admissions nurses and their Admissions Director did not know about most Medicare, Medi-Cal, and private insurer hospice regulations.

8. The only field training Ms. Luis received as a new VITAS admissions nurse was the three days she spent shadowing another admissions nurse and being handed a thick binder of information. The binder included information on Medicare and Medi-Cal regulations, but new admissions nurses were expected to read them on their own time. VITAS provided no additional training on the substance of the admissions regulations, and the fact that no one actually read through the binder was a running joke among the admissions nurses.

9. Ms. Luis regularly dealt with her colleagues' confusion about proper hospice admissions protocol. Once the other admissions nurses discovered Ms. Luis had prior hospice

experience they started asking her questions about whether a particular condition qualified a patient for hospice. Ms. Luis had to explain what the admissions criteria were for common conditions like liver disease and certain types of cancers to the other admissions nurses at least twice a week.

10. Ms. Luis tried to raise some of these concerns at the monthly admissions team meetings, but Jill Heifetz, VITAS' Admissions Director, told the admissions nurses not to worry about them because the patients' care teams would ultimately correct any admissions errors.

11. In 2013, Ms. Luis was promoted to Patient Care Team Manager. Her new role involved managing patients' care *after* they were admitted to hospice. She coordinated services for patients — who were assigned to her team's care — among the members of her team, which included a doctor, a nurse, a home health aid, and a social worker. Ms. Luis' patient care team received several patients each month whom the admissions team had improperly admitted for hospice care. Ms. Luis repeatedly attempted to raise these compliance concerns with Ms. Heifetz, Charity Brown, the Patient Care Administrator ("PCA"), and Bruce Davis, the General Manager of VITAS East Bay, through in-person, informal discussions, emails, and formal complaints. But no new training for admissions nurses resulted from her complaints, and the improper admissions continued.

12. Ms. Luis was promoted to the PCA role in August 2015 and began overseeing the clinical and financial operations of the multi-disciplinary staff on several patient care teams, instead of just the single patient care team she had previously managed. She also began independently auditing patient records and discovered that VITAS was admitting patients to hospice who were not "terminally ill" and billing insurers for their care.

13. Ms. Luis discussed her findings with the newly-appointed Medical Director, Dr. Steven Freedman. The two of them brainstormed ways they could improve VITAS' hospice regulation compliance. In or around February 2016 Ms. Luis and Dr. Freedman set up meetings with Ms. Heifetz to discuss concerns about her team's admissions errors and possible solutions. After two or three of these meetings, Mr. Davis told Ms. Luis he was calling off their meetings because Ms. Heifetz reported that Ms. Luis and Dr. Freedman had used the meetings to "bully" Ms. Heifetz.

14. Mr. Davis began to meet with Dr. Freedman and Ms. Luis, but only attended a few weekly meetings to discuss admissions issues, and then started skipping the meetings because he was

out of the office.

15. In March 2016, Mr. Davis assigned Ms. Luis to a new National Patient Care Administrator. He did not give Ms. Luis a reason for the new assignment, but it did not make much sense because her new National PCA worked in VITAS' San Diego office and did not oversee any of the Northern California programs. Ms. Luis had to reallocate a lot of her time, so that she could deal with patient care issues on her own without proper support from her National PCA; this kept her from working on the admissions protocol issues she and Dr. Freedman had tried to raise with senior level management.

16. Both the VITAS Assistant General Manager, Brian Pienta, and Mr. Davis regularly harassed Ms. Luis and pressured her to resign. They would come into her office unannounced to yell at her about the decreases in patient admissions and increases in patient discharges that she and Dr. Freedman had presided over as part of their compliance efforts. Ms. Luis' blood pressure, which had previously been normal, was suddenly hazardously high and she had a difficult time sleeping.

17. On July 19, 2016, Ms. Luis filed a formal complaint with VITAS's corporate office in Florida. Exhibit A, Formal Email Complaint. She reported the fraudulent admissions practices she had observed and the resistance and retaliation she had received from management when she tried to bring the program into compliance.

18. Beginning in July 2016, Ms. Luis took paid time off, and was on administrative leave briefly (during investigation of her formal complaint).

19. VITAS corporate management set up a meeting with to discuss Ms. Luis' complaint with her while she was on leave. On July 26, 2016 Ms. Luis met with Brian Davis, VITAS' Vice President of Operations, Karen Peterson, Chief Nursing Officer, and Joanne Mack, Senior Vice President of Operations. They assured Ms. Luis they would take steps to address the admissions issues, and promised that she would not face any additional retaliation when she went back to work.

20. Ms. Luis returned to work for approximately two weeks beginning August 15, 2016. During that time she did not observe any meaningful action by VITAS to address the issues she had raised in her complaint, and during her subsequent meeting, about fraudulent admissions and billing practices. In fact, VITAS had fired Dr. Freedman — her only colleague who had helped her with

admissions compliance work — while she was gone on leave.

17. Upon information and belief, the only positive step VITAS took in response to Ms. Luis' complaint was sending a National Patient Care Administrator, Terry Stout, to an admissions meeting on August, 25, 2016. At that meeting, Ms. Stout incorrectly instructed the nurses that they did not need to use the word "hospice" when obtaining informed consent from patients and their families if it would help overcome their potential objections to foregoing curative care for palliative care.

21. Ms. Luis left work on personal leave on August 31, 2016 after continued harassment from Mr. Davis, who upon information and belief, has been promoted to an even more senior corporate position. Ms. Luis has since exhausted her paid leave and has been on protected disability leave since September 2016.

22. As a result of the conduct described above, VITAS is liable under the California False Claims Act and the Insurance Fraud Prevention Act for submitting false claims for reimbursement for patients VITAS improperly admitted, and liable under the California Labor Code and Health and Safety Code for retaliation against Ms. Luis.

## PARTIES

23. Relator-Plaintiff Almea Luis is a current employee of VITAS and is a resident of Concord, California. Relator-Plaintiff is employed by Defendants as a Patient Care Administrator and oversees the multi-disciplinary staff that provides hospice care to patients in Alameda, Contra Costa, and San Joaquin counties. In her seven years with VITAS, she has noticed numerous instances where VITAS management and staff improperly admitted patients to hospice care. After Defendants' senior management ignored her efforts to bring VITAS into compliance with the law, Relator-Plaintiff independently audited patient records and became aware of Defendants' widespread insurance fraud.

24. Defendant VITAS Health Care Corporation of California is a Delaware corporation with its principal place of business at 255 East Fifth Street, Suite 1050, Cincinnati, Ohio 45202. At all times relevant hereto, VITAS conducted business in California, including but not limited to providing hospice care services to the general public in California. At all times relevant hereto, VITAS entered into contracts to provide hospice services and provided hospice services in performance of those contracts in Alameda County, California.

25. Defendant VITAS Health Services of California, Incorporated, is a California Corporation with its principal place of business at 201 S. Biscayne Boulevard, Miami, Florida, 33131. At all times relevant hereto, VITAS Health Services of California conducted business in California, including but not limited to provide hospice care services to the general public in California. At all times relevant hereto, VITAS Health Services of California entered into contract to provide hospice services and performed hospice services pursuant to said contracts in Alameda County, California.

**VENUE**

26. This is a civil action arising under the laws of the State of California to redress violations of the California Insurance Fraud Prevent Action, Insurance Code §§ 1871 *et seq.*, California False Claims Act, Government Code §§ 12650 *et seq.*, California Labor Code § 1102.5, and California Health & Safety Code § 1278.5.

27. This Court has jurisdiction over the subject matter of this claim pursuant to California Insurance Code § 1871.7(e)(1) and Government Code § 12652(c)(1).

28. Venue is proper under California Code of Civil Procedure § 395.5 because Defendants entered into contracts to provide hospice services and performed on those contracts in Alameda County.

**FACTUAL ALLEGATIONS**

28. Relator-Plaintiff Almea Luis is a Registered Nurse in California. Prior to her employment with VITAS, Ms. Luis worked as a Registered Nurse Case Manager for three years at a non-profit community hospice provider, Hospice of the East Bay, in Pleasant Hill, California. During her time at Hospice of the East Bay, Ms. Luis became very familiar the Medicare, Medi-Cal, and private insurance regulations that determine eligibility for hospice coverage.

**California's Health Insurance Regulations Limit Hospice Services to Enrollees with a "Terminal Disease."**

29. Individual and group health insurance plans in California are required to provide hospice service as a health benefit included in the plan. *See* Cal. Ins. Code § 10112.27(a)(2)(A)(ii), Cal. Health & Safety Code § 1368.2.14. "Hospice" is defined as "a specialized form of interdisciplinary health care that is designed to provide palliative care, alleviate the physical, emotional, social, and spiritual discomforts of an individual who is experiencing the last phases of life

due to the existence of a terminal disease, and provide supportive care to the primary caregiver and the family of the hospice patient." Cal. Health & Safety Code § 1746.

30. "Terminal Disease" or "terminal illness" is defined as "a medical condition resulting in a prognosis of life of one year or less, if the disease follows its natural course." Cal. Health & Safety Code § 1746.

31. Accordingly, an individual covered under a private insurance plan must be diagnosed with a "terminal disease" with a life expectancy of one year or less in order to qualify for "hospice" care as a health benefit under their plan. *See* Cal. Health & Safety Code § 1368.2.

**Medi-Cal Limits Hospice Coverage to Individuals with a Life Expectancy of 6 Months or Less.**

32. Medi-Cal, the social safety net that provides healthcare coverage to Californians that cannot afford to pay for healthcare, limits coverage for hospice care to individuals who have been certified as "terminally ill" in accordance with Medicare regulations specified in Title 42, Code of Regulations, Part 418, Subpart B. 22 C.C.R. § 51349.

33. Medi-Cal defines "terminally ill" as an individual with a medical prognosis as certified by a physician that his or her life expectancy is six months or less. 22 C.C.R. § 51180.2.

34. Medi-Cal requires a hospice provider to obtain written certification of terminal illness before it can submit a claim for payment. The written certification of terminal illness must specify that the individual's prognosis is for a life expectancy of six months or less if the terminal illness runs its normal course. Clinical information and other documentation that support the medical prognosis must accompany the certification and must be filed in the medical record. These supporting documents must include a brief narrative explanation of the clinical findings that support a life expectancy of six months or less, drafted by the physician as part of the certification or recertification forms. The narrative explanation must be located immediately prior to the physician's signature. 22 C.C.R. § 51349.

35. Medi-Cal requires that hospice providers initially certify that the covered patient is terminally ill. Just before or immediately after the end of the initial 90 days of hospice care, the hospice provider must recertify that the covered patient is terminally ill in order to continue hospice care for another period of 90 days. After the first two 90-day periods, Medi-Cal will provide payment

for hospice care for an unlimited amount of 60-day periods so long as the hospice provider recertifies the Medi-Cal patient is terminally ill every 60 days. Prior to submitting recertification for a 60-day coverage period, a hospice physician or nurse practitioner must have a face-to-face encounter with the hospice patient to determine the continued eligibility of that patient. 22 C.C.R. § 51349.

36. In addition to certification, Medi-Cal beneficiaries must voluntarily elect hospice care, and in doing so, agree to forego curative treatment of their terminal illnesses. Patients who receive Medi-Cal hospice benefits no longer receive care that seeks to cure their illnesses. For this reason, electing hospice care is a critical medical decision for a patient who has been informed that his or her death is imminent.

**VITAS's Insurance Fraud Scheme for Hospice Care Violates California's False Claims Act and the Insurance Fraud Protection Act.**

37. VITAS has committed insurance fraud against private health insurance companies in California and against Medi-Cal by submitting false claims for payment of hospice care. California requires that private health insurance provide hospice coverage for enrollees with one year or less to live. Medi-Cal provides hospice coverage for enrollees with six months or less to live.

38. VITAS has to certify that a Medi-Cal patient is "terminally ill" in order to get paid for his hospice care. VITAS must also submit medical documentation from a physician or nurse practitioner that supports a "terminally ill" prognosis.

39. Private insurers require the same confirmation that a patient is "terminally ill" before they will pay for that patient's hospice care.

40. VITAS knowingly submitted false or fraudulent insurance claims for hospice services that were inappropriately provided to patients or were not medically necessary because the patients were not "terminally ill." Medi-Cal and private health insurers operating in California paid those false claims.

41. VITAS' business practices also resulted in submitting false or fraudulent claims to Medi-Cal and private health insurers for hospice care that was not medically necessary or reasonable under California's hospice regulations.

42. VITAS medical staff falsified medical records to state that a patient was "terminally ill"

in order to qualify him/her for hospice care.

43. VITAS often provides hospice care for longer twelve months to patients improperly given a prognosis of terminal illness.

44. VITAS has submitted claims for Medi-Cal payments for hospice care without conducting the required recertification or face-to-face visit.

45. At just Relator-Plaintiff's VITAS East Bay facility (listed as Program 91 on internal revenue tracking documents), between 2011-2016, VITAS submitted more than $23 million in Medi-Cal insurance claims (*see* Exhibit B, VITAS Revenue Tracking Report – listing Medicaid funds collected), and more than $3.78 million in private health insurance claims (*id.*, listing "Ins. Per Diem" revenues). Based upon her audit, as described below, Relator-Plaintiff observed that approximately 12% of the claims were fraudulent, for people who did not need hospice services, such that an estimated more than $3 million was claimed fraudulently in just VITAS East Bay during this period.

**VITAS Has a Sales-Oriented Culture that is Wholly Inappropriate to a Hospice Provider and Fostered Fraudulent Hospice Admissions.**

46. VITAS expected their clinical employees to "sell" hospice care in order to increase the number of claims submitted to insurance providers without regard to whether the hospice care services were appropriate for the patients.

47. Sales representatives frequently contacted potential patients and their families. Ms. Luis discovered this during her time as a Patient Care Team Manager because patients and their families would complain that they were not receiving the full range of services the sales representatives — who targeted assisted living facilities — had promised them. For example, Ms. Luis regularly dealt with upset patients, or family members, who wanted to know why they could not go off of hospice to receive chemotherapy, or who wanted to know why they weren't receiving daily visits from their patient care team's doctor, and some families and patients who had no idea what hospice was or that they were in it.

48. VITAS also trained all admissions nurses on "Choices;" a corporate marketing pamphlet that admissions staff were supposed to flip through with potential patients and their families. Part of the "Choices" training was called "overcoming objections," which trained admissions nurses on

how to gloss over the hospice aspects of hospice to get patients and their families to consent to hospice care placement.

49. The "Choices" pamphlet was the only literature on which new admissions nurses received any formal training.

**<u>VITAS Failed to Train Staff Properly, Leading to the Improper Hospice Admissions and Fraudulent Billings.</u>**

50. VITAS did not properly train admissions staff on how to actually assess patients to determine if they were terminally ill and thus hospice eligible.

51. Ms. Luis shadowed another admissions nurse for her first three days on the job before she started working independently. At no point during her "orientation" did anyone discuss her training binder with her, which included the Medi-Cal and private insurance regulations. She quickly discovered none of the other admissions nurses had ever read, or been encouraged to read, the binder of relevant regulations.

52. VITAS management only discussed admissions procedures during monthly admissions meetings. The meetings were held in a public restaurant and Ms. Heifetz, who would read off a list of complaints about improper admissions that she had received from the patient care teams.

53. Ms. Heifetz — who was not a registered nurse and had no clinical experience or specialized medical knowledge — only *relayed* the patient care teams' concerns about improper admissions. Instead of offering instruction on how to correct common admissions mistakes she regularly told the admissions nurses that the same patient care teams who had complained about the improperly admitted patients would just discharge them once they determined the patients were not hospice eligible.

54. Not only did the admissions staff not receive formal training on hospice regulations when they joined VITAS, most of them had no prior experience with hospice care. In fact, Ms. Luis is only aware of one other admission nurse who had prior hospice experience being hired at her facility in the past eight years. Ms. Luis twice recommended experienced hospice case managers for the admissions nurse team — Heather Meixner in 2014 and Rowena Ng in 2015. But Ms. Heifetz turned them both down even though when she was short on admissions nurses. Ms. Heifetz hired On-Call

RNs to fill the Admissions RN roles instead even though the on-call nurses apparently did not know hospice regulations pertaining to admissions and certification for hospice benefits.

55. VITAS regularly urged its admissions staff to admit patients into hospice care without assessing if each patient was terminally ill.

**Relator-Plaintiff Luis has personal knowledge of VITAS's Fraud, and She Conducted an Independent Audit of Patients' Medical Records.**

56. In 2009, Ms. Luis was hired by VITAS and joined the Admissions Team as the program's only Hospital Liaison. She reported to Ms. Heifetz. At the time, it was apparent to Ms. Luis that Ms. Heifetz and other members of the Admissions Team lacked critical knowledge of hospice care regulations and clinical guidance for assessing patients for hospice care.

57. While Ms. Luis was not aware of any widespread fraud at this time, she did observe improper practices. On one occasion, for example, she evaluated a patient and found her to be non-terminal (life expectancy greater than six months), and did not admit the patient for hospice care. Shortly thereafter, Ms. Heifetz requested that Ms. Luis re-evaluate the patient. Ms. Luis felt she was being pressured by Ms. Heifetz to admit the patient to hospice. However, the patient remained non-terminal upon re-evaluation, so Ms. Luis still did not admit the patient. Ms. Luis later learned the patient was nonetheless admitted to hospice due to continued pressure by Ms. Heifetz and Heather Mullally, a VITAS marketing representative. Ms. Luis reviewed the patient's admission records and noticed that another colleague's documentation in the record corroborated Ms. Luis's: the patient was non-terminal.

58. In August 2013, VITAS promoted Ms. Luis to Team Manager, where Ms. Luis began managing two admissions teams that operated in Oakland/Alameda and Berkeley/Emeryville areas. As her responsibility grew with her promotion to Team Manager, Ms. Luis became aware of more widespread problems with the VITAS admissions program.

59. On or around January 14, 2014, Ms. Luis because aware of a significant compliance violation with one of the doctors on another admissions team, Dr. Charles Barnes. Dr. Barnes failed to perform the necessary face-to-face doctor visits required for recertification and falsified 26 patients' medical records in order to recertify the patients for VITAS hospice care. Dr. Beaty, as acting Medical

Director, told her he would handle the situation. However, when Ms. Luis reviewed the same patients' medical records in 2016 (after she had been promoted to Patient Care Administrator), she discovered VITAS had continued to bill Medicare and Medi-Cal for these 26 patients. These patients should never have been recertified because the face-to-face doctor visits had not been performed. Ms. Luis also noticed that the falsified information regarding Dr. Barnes's face-to-face visits remained in the patients' medical records.

60. On August 19, 2015, Ms. Luis assumed the role of PCA. She received very little training transitioning into the role, only spending a couple days with the outgoing PCA Ms. Brown who was available to guide her remotely as needed.

61. On or around January 4, 2016, Dr. Beaty resigned from his senior management position as Medical Director. He was replaced by Dr. Freedman. Dr. Freedman and Ms. Luis shared the view that correcting deficiencies in the admissions program was a top priority.

62. At the beginning of January 2016, Ms. Luis began an independent audit of hospice patients' medical records and identified for the following key areas for improvement in admissions:

a. nurses failing to do physical assessments, resulting in admitting non-terminal patients into hospice care;

b. terminal patients suffering from pain because their symptoms were going untreated;

c. doctors failing to properly document hospice criteria for patient admissions; admissions teams failing to obtain an admitted hospice patient's medical history as required, or failing to coordinate initial hospice care with the patient's attending doctor that has provided care for years;

d. complaints from patients and their families regarding nurses "overselling" and "overpromising" services provided through VITAS hospice in order to entice enrollment;

e. systemic misunderstanding of "informed consent" by the admissions team;

f. Ms. Heifetz, the admissions director, working outside of her scope of practice as a social worker and approving medical procedures and medications to entice patients into

hospice care, as well as coaching hospice teams to use deceptive terminology to entice hospice enrollment.

63. Within the first few months of 2016, Dr. Freedman and Ms. Luis had several meetings with Ms. Heifetz, who communicated to them she would begin working with the admissions team to correct their deficiencies. At the behest of Dr. Freedman and Ms. Luis, the senior management team agreed to meet weekly in order to improve the admissions program. However, what were supposed to be routine meetings to correct deficiencies in admissions rarely occurred, and were often canceled by Ms. Heifetz.

64. Within the first two months of 2016, it became clear to Dr. Freedman and Ms. Luis that Ms. Heifetz and other senior management did not intend to collaborate with them to improve the admissions program. Upon information and belief, Dr. Freedman began to seek guidance from VITAS Regional Medical Director Dr. Alen Voskanian on how to reform the admissions program and address doctor incompetence.

65. During the end of February 2016, Ms. Luis reported an issue related to admissions failing to comply with regulations to Ms. Brown, then her National PCA contact, per protocol.

**<u>As She Continued to Report Violations at VITAS, Ms. Luis Suffered Retaliation for her Efforts to Bring VITAS into Compliance.</u>**

66. On or around March 1, 2016, Mr. Davis, the General Manager, informed Ms. Luis that she would no longer be reporting to Ms. Brown. Ms. Luis felt this was in retaliation for her efforts to improve the admissions program. Mr. Davis instructed Ms. Luis to report to a new National PCA, John Miller. Ms. Luis perceived the change in reporting chain to be retaliatory because Mr. Davis had conveyed to Ms. Luis previously that he perceived Mr. Miller to be incompetent. Changing Ms. Luis's assigned National PCA immediately resulted in a heavier workload for Ms. Luis, leaving her with very little time to work on reforming the admissions program into compliance with hospice regulations.

67. Under the new National PCA, Ms. Luis could no longer get quick, concise answers to questions like she did with Ms. Brown. Under Mr. Miller, Ms. Luis was also responsible for correcting errors on patient consent forms, resulting in Ms. Luis devoting several hours per week tracking down patients' family members to get the consent forms corrected. Ms. Brown had required the admissions

staff who made the mistake on the consent form to correct it, which allowed Ms. Luis to have more time to focus on improving patient care and compliance.

68. During this time, Ms. Luis and Dr. Freedman continued to observe recurring problems with admissions, including admissions nurses' failure to obtain proper informed consent from patients or their guardians, or failure to conduct proper assessments of patient symptoms. Ms. Luis reported many of these concerns directly to either Mr. Davis — and later to the Assistant General Manager Mr. Pienta — through informal in-person conversations, and via email. See, for example, Exhibit C, Emails Disclosing Violations; Exhibit D, Emails about Dr. Johnson's Performance Review; Exhibit E, Emails about Invalid Consent to Hospice Care.

69. On or around April 26, 2016, Dr. Freedman and Ms. Luis provided a training workshop to the admissions program staff on how to perform the required physical assessment of patients prior to admitting them into hospice care. The training workshop was motivated by reports that admissions nurses were not bringing stethoscopes or blood pressure cuffs to their intake assessments. During that presentation, Dr. Freedman and Ms. Luis instructed the admissions nurses that they needed to listen to every prospective patient's heart, lungs, and abdomen, and ask him/her questions to check his/her cognitive functioning. Ms. Heifetz interjected that they did not have to conduct a comprehensive assessment for each admission. When Dr. Freedman and Ms. Luis responded that this type of assessment was necessary to avoid erroneous placement of non-terminal patients in hospice care, the Admissions Assistant Manager, Stephanie McGinty, also interjected to contradict them. She told the admissions nurses they only had to look at prospective patients for "ten seconds" to determine terminality. The Admissions Doctor at the meeting, Dr. William Johnson, added that he would go out and take care of these assessments, even though Ms. Luis knew from her time as an admissions nurse that this was impossible because there were too many patients for him to assess each one individually. After the admissions team leadership interrupted the presentation repeatedly, Dr. Freedman and Ms. Luis were unable to continue, Dr. Freedman left, and Ms. Heifetz told Ms. Luis she needed to leave. From this point forward, Ms. Heifetz became openly hostile to Ms. Luis and prevented her from providing clinical guidance to the admissions nurses.

70. After Mr. Pienta was hired as the Assistante General Manager in June 2016, Dr. Freedman and Ms. Luis began reporting the violations in the admissions department to him. They briefed Mr. Pienta on the unsuccessful efforts to reform the admissions program into compliance and informed him that Ms. Heifetz openly resisted their efforts.

71. Mr. Pienta began going to Ms. Luis's office frequently for one-on-one meetings to pressure her into resigning. Mr. Pienta told Ms. Luis she could not collaborate or work with others, blamed Ms. Luis for the dysfunction in the senior management team, told her she would never be able to improve the program, and threatened that if Ms. Luis did not change, many people would lose their jobs. Ms. Luis took the threat from Mr. Pienta to mean that if she did not stop her efforts to bring the hospice program into compliance with the law, people would lose their jobs due to the decrease in hospice admissions.

72. On or around July 15, 2016, VITAS experienced a significant service failure with a young male patient who was admitted into hospice care without his knowledge or consent. When the patient learned he was on hospice care, he made it clear that he did not consent and immediately signed a form revoking the hospice benefit. Dr. Freedman and Ms. Luis informed Mr. Pienta of the situation and underscored the importance of training the admissions program on the issue of informed consent. Dr. Freedman and Ms. Luis offered to provide significant education on this issue to admissions, but Mr. Pienta—despite being a non-clinical staff member with no background in hospice care—told Dr. Freedman and Ms. Luis that he would follow up with the admissions team regarding informed consent. Upon information and belief, Mr. Pienta never followed up with the admissions team regarding informed consent.

73. Ms. Luis did provide some training workshops to the interdisciplinary teams in the hospice program on informed consent. On separate occasions, admissions team members Brandy Houser, Admissions Liaison, and Michelle Eduarte, Admissions Registered Nurse, attended Ms. Luis's workshops and approached her afterwards to tell Ms. Luis that they had never been told that a mentally competent adult patient must sign his or her own consent form for hospice care—not a family member.

74. On July 6, 2016, Mr. Pienta pressured Ms. Luis into resigning from VITAS. Ms. Luis had been distressed by the resistance to her reforms to the admissions process and felt she could no

longer be part of an organization that was so derelict in its responsibilities to patients and so out of compliance with legal requirements. Two days later, Ms. Luis rescinded her resignation after Dr. Freedman informed her that the cumulative stress she was experiencing warranted some time off, not her resignation. Mr. Pienta told Ms. Luis she would not be allowed to remain the PCA because the VITAS corporate headquarters was watching their program closely due to the decline in admissions to hospice. Mr. Pienta said the corporate headquarters wanted a visible change in senior management.

75. On July 18, 2016, Mr. Pienta met with Ms. Luis and Dr. Freedman. Mr. Pienta identified no deficiencies in Ms. Luis's performance as PCA. Dr. Freedman and Ms. Luis asked if they were being blamed by VITAS corporate for the declining patient census because the rate of patients discharged from hospice had gone up significantly since Ms. Luis and Dr. Freedman joined senior management and began working closely with the patient care team managers to make sure newly admitted patients were properly assessed and eligible for hospice care. For example, in 2014 VITAS discharged only sixty-eight patients, but nearly doubled that to 115 discharged in 2015. During Ms. Luis tenure as PCA from September 2015 through July 2016, VITAS discharged 134 patients from hospice. Exhibit F, VITAS Patient Discharges from January 2010 through August 2016. Additionally, whereas admissions nurses deemed 0% of patients in appropriate for admission to hospice in 2014, the team found 12% inappropriate for admission from January 2015 through June 2015, and January 2016 through June 2016. Exhibit G, NUTC Reports.

76. Mr. Pienta told Ms. Luis and Dr. Freedman that they were "changing things and that was not appreciated."

77. On July 19, 2016, Ms. Luis sent an email to the VITAS corporate office to inform them of the illegal activity happening in admissions, about Dr. Freedman's and her efforts to bring the admissions team into compliance, and about the retaliation she had faced. Exhibit A.

78. On July 22, 2016, Ms. Luis had a conference call with VITAS's Compliance Officer Bob Miller (a corporate Vice President), along with Executive Vice President of Human Resources Kal Mistry, and corporate Human Resources Officer Eliana Brown, regarding the disclosures of unlawful activities she had emailed to the VITAS corporate headquarters.

79. On July 25, 2016, upon information and belief, Dr. Freedman met with Senior Vice President of Operations JoAnn Mack, Vice President of Operations Brian Davis, and Chief Nursing Officer Karen Peterson to discuss compliance issues with the hospice program. Ms. Luis was not present for this meeting.

80. On July 26, 2016, Ms. Luis had a meeting with Ms. Mack, Mr. Davis, and Ms. Peterson to discuss the compliance issues Ms. Luis had brought to the attention of the corporate office. Ms. Peterson informed Ms. Luis that admissions nurses do not need to do physical assessments of patients prior to admitting them to hospice. The VITAS managers encouraged Ms. Luis to take some time off due to the stress she had encountered based upon Ms. Pienta's constant pressure for her to resign.

81. Ms. Luis decided to follow their advice and took paid time off until she returned to work on August 15, 2016. While on leave, Dr. Freedman notified Ms. Luis that he had been fired from VITAS on August 8, 2016.

82. Immediately upon her return on August 15, 2016, Ms. Luis was called into a meeting with Bruce Davis and Mr. Pienta. They instructed Ms. Luis to stay out of the way of the admissions teams and to not ask any questions that would make Ms. Heifetz feel uncomfortable. Ms. Luis also learned that the VITAS corporate headquarters management had assigned her yet another new National PCA, Terry Stout.

83. On August 22, 2016, Ms. Luis complained about various aspects of Mr. Pienta's inappropriate conduct to management, to Ms. Mack and Ms. Peterson. Ms. Mack accused Ms. Luis of causing panic amongst the staff by telling everyone that VITAS was "committing fraud and there will be a huge investigation." Ms. Luis told them she never used those precise words, but believed that this was how Mr. Pienta must have been describing her disclosures to VITAS's corporate office.

84. In this August 22, 2016 meeting, Ms. Mack and Ms. Peterson asked Ms. Luis if she still believed there were patients on hospice care that were inappropriately admitted. Ms. Luis informed them she had received recent complaints from multiple clinical staff members (both nurses and psycho-social staff) over patients being admitted to hospice inappropriately. Ms. Luis also told them she had received complaints from clinical staff that they felt uncomfortable raising these issues at team

meetings because Dr. Johnson, the admissions doctor, became extremely defensive when staff members raised concerns about the admission process in team meetings.

85. At the August 22, 2016 meeting, Ms. Peterson told Ms. Luis she was concerned that staff would "overcorrect in an attempt to make sure everything [in hospice] was perfect." Ms. Peterson admitted that her own chart audits (as part of the ongoing investigation into Ms. Luis's complaint of systemic inappropriate admissions in hospice) revealed some non-compliance but stated that she did not find widespread deficiencies. Ms. Peterson said she ran her charts by Regional Medical Director, Dr. Voskanian. Ms. Peterson said that Dr. Voskanian found compliance issues with her patients at the time they were admitted, but said "we would admit these patients today" based on their present medical condition because they met criteria.

86. At the end of the August 22, 2016 meeting, Ms. Mack said it was clear Ms. Luis was unable to work with Mr. Pienta, and had a history of problems with Ms. Heifetz. Ms. Luis told Ms. Mack she thought the allegations stemmed from Ms. Luis reporting compliance issues to senior management who consistently failed to take corrective action. Ms. Luis told Mss. Mack and Peterson that she had worked hard for VITAS for seven years, striving to improve patient care and would not be pressured into resigning despite the stressful environment. Ms. Mack replied that it would have been so much easier to have gotten rid of Ms. Luis by refusing to accept her rescission of her resignation a month earlier.

87. On August 25, 2016, Ms. Luis attended the admissions team meeting. National PCA Ms. Stout was giving a training workshop on informed consent to the admissions team. Mr. Stout stated "we do not have to say the word hospice" as long as we explain our services to the patients and their families. Ms. Heifetz chimed in and stated it is "incredibly unfair to keep shoving down the word hospice when talking to people" because so many people are distressed by the word hospice. Ms. Stout and Ms. Heifetz instructed the team to use the term "palliative care" instead.

88. At the August 25, 2016 meeting, Ms. Luis addressed Ms. Stout and asked if it was okay for a nurse to go through an entire presentation with a patient and have the patient consent to hospice care without ever informing the patient that they are signing up for hospice care. Ms. Stout responded by stating nurses should use the terms "comfort care" or "palliative care" to avoid discouraging

patients and their families from signing onto hospice care. Ms. Stout specifically instructed the admissions team to "comfort care" or "palliative care" rather than hospice to avoid obstacles presented by the patient or their family.

89. Cynthia Pierce, VITAS Performance Improvement Specialist, attended this August 25, 2016 meeting. Ms. Pierce later confided to Ms. Luis that she felt uncomfortable with the instruction Ms. Stout gave to the admissions team because patients and families are required to give informed consent.

90. On August 31, 2016, Ms. Luis was excused from work by her doctor due to stress. Ms. Luis applied for protected leave and has not yet returned to work at VITAS. Ms. Luis has been on personal leave without pay since September 16, 2016.

91. On September 30, 2016, Ms. Luis spoke with Mr. Miller, VP of Compliance, who informed her of the outcome of his investigation into the compliance issues Ms. Luis raised. Mr. Miller stated that he only found one medical chart where the patient failed to give informed consent, though, in fact, Ms. Luis is aware of such incidents occurring on an ongoing basis at VITAS.

92. Ms. Luis asked Mr. Miller if VITAS planned to adopt a policy requiring admissions nurses to conduct physical assessments before admitting patients into hospice care. Mr. Miller said that VITAS did not.

93. On December 9, 2016, Ms. Luis asked Denise Bailey, VITAS Director of Employee Relations, what the outcome was of the investigation into her retaliation and other employment claims concerning Mr. Pienta. Ms. Bailey informed Ms. Luis that her investigation revealed "communication problems" but ultimately found all of Ms. Luis's allegations to be "unsubstantiated," but gave no indication that any of Ms. Luis's witnesses were interviewed.

## FIRST CAUSE OF ACTION

### California Insurance Fraud Prevention Act, Insurance Code § 1871.7

95. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

96. Insurance Code § 1871.7(b) provides that every person who violates Penal Code § 550 is subject to civil penalties of between $5,000 and $10,000, plus an assessment of not more than three times the amount of each claim for compensation.

97. Penal Code § 550(a) makes it illegal to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:

a. Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.

b. Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

c. Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

98. Penal Code § 550(b) makes it illegal to do, or to knowingly assist or conspire with any person to do, any of the following:

a. Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

b. Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

99. By virtue of the facts described above, Defendants violated the Insurance Fraud Prevention Act, Insurance Code §§ 1871 *et seq.* by engaging in conduct that violated Penal Code § 550(a) and (b).

100. Defendants submitted claims to insurers for hospice care for patients who were not eligible or appropriate for hospice because they were not terminally ill.

101. Claims for payment of benefits related to hospice care for VITAS were false claims within the meaning of Penal Code § 550(a) because hospice was not medically appropriate for patients without a terminally ill prognosis.

102. As a result of the above-described conduct, Relator-Plaintiff is entitled to the relief available to a Relator.

103. Relator-Plaintiff files this Complaint under seal for 60 days, without service on Defendants until this Court so orders, as required by Insurance Code § 1871.7(e)(2).

104. Relator has served this Complaint and a written disclosure of substantially all material evidence in her possession to the Insurance Commissioner and the District Attorney for the County of Alameda, as required by Insurance Code § 1871.7(e)(2).

## SECOND CAUSE OF ACTION

**Injunctive Relief, Insurance Code § 1871.7(b)**

105. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

106. Insurance Code § 1871.7(b) empowers the Court to "grant other equitable relief, including temporary injunctive relief, as is necessary to prevent the transfer, concealment, or dissipation of illegal proceeds, or to protect the public."

107. Relator-Plaintiff seeks equitable relief pursuant to Insurance Code § 1871.7(b) because, unless equitable relief is granted, Defendants are likely to continue their unlawful conduct after the conclusion of the litigation. If Defendants continue their fraudulent activities, insurers operating within California will continue to pay claims related to hospice care for non-terminal patients ineligible for hospice care. In addition, the people of the State of California will continue to suffer damage if Defendants continue their fraudulent activities, as health insurance rates will continue to increase more than they otherwise would or should.

## THIRD CAUSE OF ACTION

**California False Claims Act, Presenting False Claims (Cal. Gov. Code § 12651(a)(1))**

108. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

109. Defendants knowingly (as defined in California Government Code section 12650, subdivision (b)(2)) presented or caused to be presented false claims for payment or approval to an officer or employee of California.

110. Defendants knowingly made, used, and/or caused to be made and used false records and statements, included but not limited to bills, invoices, requests for reimbursement, and records of services, in order to obtain payment or approval of charges to the Medi-Cal program for hospice

services provided to patients not eligible for hospice care because they were not terminally ill and inappropriate for hospice care.

111. Defendants knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

112. The conduct of Defendants violated Government Code section 12651, subdivision (a)(1) and was a substantial factor in causing California to sustain damages in an amount according to proof pursuant to California Government Code section 12651, subdivisions (a).

113. As a result of the above-described conduct, Relator-Plaintiff is entitled to the relief available as a Relator, plus two times the amount of backpay, interest, compensatory damages, and attorneys' fees and litigation costs pursuant to California Government Code § 12653(b).

**FOURTH CAUSE OF ACTION**

**California False Claims Act, Making or Using False Records or Statements to Obtain Payment or Approval of False Claims (Cal. Gov. Code § 12651(a)(2))**

114. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

115. Defendants knowingly (as defined in California Gov. Code § 12650(b)(2)) made, used, or caused to be made or used false records or statements to get false claims paid or approved by California.

116. Defendants knowingly made, used, and/or caused to be made and used false records and statements, including but not limited to bills, invoices, requests for reimbursement, and records for services, in order to obtain payment or approval of charges to the Medi-Cal program for hospice services provided to patients without a terminally ill prognosis and inappropriate for hospice care.

117. Defendants knowingly made, used, and caused to be made and used false certifications that the services for which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

118. Defendants' conduct violated Cal Gov. Code§ 12651(a)(2) and was a substantial factor in causing California to sustain damages in an amount according to proof pursuant to Cal. Gov. Code § 12651(a).

119. As a result of the above-described conduct, Relator-Plaintiff is entitled to the relief available as a Relator, two times the amount of backpay, interest, compensatory damages, and attorneys' fees and litigation costs pursuant to California Government Code § 12653(b).

## FIFTH CAUSE OF ACTION

**(In the alternative) California False Claims Act, Retention of Proceeds of Inadvertently Submitted False Claims (Cal. Gov. Code § 12651(a)(8))**

120. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

121. In the alternative, Defendants were beneficiaries of inadvertent submissions of false claims to California, subsequently discovering the falsity of the claims, and failing to disclose the false claims to California within a reasonable time after discovery of the false claims.

122. Defendant were beneficiaries of false bills and charges to Medi-Cal for hospice services provided to patients without a terminally ill prognosis and inappropriate for hospice care.

123. Defendant were beneficiaries of false certifications that the services which it charged Medi-Cal were rendered in full compliance with all applicable statutes and regulations.

124. Defendants, on discovering that they were beneficiaries of the submission of false claims for Medi-Cal reimbursement, failed promptly to disclose the overcharge to California's Department of Health Care Services and make restitution therefor.

125. Defendants' conduct violated Cal. Gov. Code § 12651(a)(8) and was a substantial factor in causing California to sustain damages in an amount according to proof pursuant to Cal. Gov. Code § 12651(a).

126. As a result of the above-described conduct, Relator-Plaintiff is entitled to relief as a Relator.

## SIXTH CAUSE OF ACTION

**Retaliation in violation of Cal. Labor Code § 1102.5**

127. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

128. Relator-Plaintiff engaged in protected activity when she disclosed to VITAS management officials and its corporate office her belief of the unlawful practices of the admissions

team in admitting patients to hospice care without properly assessing if the patient was terminally ill, as required by law.

129. Relator-Plaintiff also refused to participate in an unlawful scheme and opposed unlawful conduct, under Labor Code § 1102.5(c), when she resisted VITAS's non-compliance with healthcare regulations and refused to admit non-terminal patients into hospice.

130. Relator-Plaintiff was subjected to adverse employment actions when she was retaliated against by Defendant in her terms and conditions of employment and with a hostile working environment.

131. Relator-Plaintiff's protected activities are causally linked to the adverse action at issue, as evidenced by the temporal proximity to when Relator-Plaintiff's whistleblower disclosures were made to VITAS corporate office and the retaliation.

132. As a direct and proximate result of Defendants' unlawful conduct, Relator-Plaintiff has suffered from severe anxiety, feelings of hopelessness, loss of earning, and other employee benefits and job opportunities in an amount to be determined at trial, and had caused her to incur attorney's fees and costs.

133. Relator-Plaintiff is entitled to backpay, interest, frontpay in lieu of reinstatement, compensatory damages (*see e.g.*, Cal. Lab. Code § 1105), attorneys' fees and litigation costs under California Code of Civil Procedure § 1021.5, declaratory and injunctive relief, and all other penalties and relief available for a violation of Cal. Lab. Code § 1102.5.

**SEVENTH CAUSE OF ACTION**

**Retaliation in violation of California Health & Safety Code § 1278.5**

134. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

135. Relator-Plaintiff engaged in protected activity when she initiated reforms to bring VITAS admissions teams into compliance with healthcare regulations and when she disclosed to VITAS senior management and corporate office her belief of the widespread unlawful practices of the admissions team in admitting patients to hospice care without properly assessing if the patient was terminally ill, as required by law. Relator-Plaintiff filed her complaint to management at her facility

and with the corporate office because she suspected the unlawful practices were negatively impacting the quality of care VITAS provides to its patients.

136. Relator-Plaintiff was subjected to adverse employment actions as a result of her raising concerns over VITAS failure to comply with regulations for admitting patients into hospice care. Relator-Plaintiff was subjected to a hostile work environment by Mr. Pienta and others. After Relator-Plaintiff raised issues of noncompliance to her Ms. Brown and others, VITAS made unfavorable changes in the conditions of Relator-Plaintiff's work, among other things, by assigning her a new National PCA with a history of incompetence, resulting in a higher work load and more stress for Relator-Plaintiff, which prevented her from implementing the reforms necessary to bring admissions into compliance. Relator-Plaintiff was harassed continually by Mr. Pienta and others based upon her disclosures.

137. Defendants had knowledge of Relator-Plaintiff's efforts to hold the admissions team accountable and bring it into compliance with healthcare regulations. Relator-Plaintiff suffered these adverse employment actions by Defendants within 120 days of making disclosures to VITAS staff regarding admissions failing to follow regulations.

138. As a direct and proximate result of Defendants' unlawful conduct, Relator-Plaintiff has suffered from severe anxiety, feelings of hopelessness, loss of earning, and other employee benefits and job opportunities in an amount to be determined at trial, and had caused her to incur attorney's fees and costs.

139. Relator-Plaintiff is entitled to backpay, interest, frontpay in lieu of reinstatement, compensatory damages (*see* Cal. Health & Safety Code § 1278.5(g)), attorneys' fees and litigation costs (*id.)*, declarative and injunctive relief relief, and all other penalties and relief available for a violation of Cal. Health & Safety Code § 1278.5.

## EIGHTH CAUSE OF ACTION

### Retaliation in violation of Cal. Ins. Code § 1871.7(k)

140. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

141. Cal. Ins. Code § 1871.7(k) protects any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and

conditions of employment by his or her employer because of complaints made in furtherance of an action under Section 1871.7, which at subdivision (b) incorporates by reference Penal Code §550, *inter alia*, relating to false insurance claims.

142. As discussed in the foregoing paragraphs of the Complaint, Relator-Plaintiff repeatedly complained of false insurance claims.

143. As discussed in the foregoing paragraphs of the Complaint, after complaining, Relator-Plaintiff suffered multiple adverse actions including ongoing hostile work environment harassment designed to make her quit and inferior terms and conditions of employment.

144. Under Section 1871.7(k), based upon the retaliation she suffered, Relator-Plaintiff is entitled to two times the amount of backpay, interest, compensatory damages, and attorneys' fees and litigation costs.

**NINTH CAUSE OF ACTION**

**Retaliation in violation of Cal. Gov. Code § 12653**

145. Relator-Plaintiff incorporates by reference the foregoing paragraphs of this Complaint.

146. Cal. Gov. Code §12653 protects any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of efforts to stop violations of the California False Claims Act.

147. As discussed in the foregoing paragraphs of the Complaint, Relator-Plaintiff repeatedly complained of false claims and sought to stop them from occurring.

148. As discussed in the foregoing paragraphs of the Complaint, after complaining, Relator-Plaintiff suffered multiple adverse actions including ongoing hostile work environment harassment designed to make her quit and inferior terms and conditions of employment.

149. Under Section 12653(b) based upon the retaliation she suffered, Relator-Plaintiff is entitled to two times the amount of backpay, interest, compensatory damages, punitive damages, and attorneys' fees and litigation costs.

## PRAYER FOR RELIEF

WHEREFORE, Relator-Plaintiff, individually and on behalf of the State of California, prays for relief against Defendants as follows:

1. All relief available to her as a Relator under the Insurance Fraud Prevention Act and the California False Claims Act.

2. Past and future lost compensation and benefits based upon retaliation, in a sum according to proof at trial;

3. Compensatory damages, including but not limited to emotional distress damages;

4. Punitive and/or exemplary damages;

5. Interest on judgment, including pre-judgment interest, to the extent permitted by law;

6. Liquidated damages where statutorily permitted;

7. Civil penalties of $10,000 for each violation of Insurance Code § 1871.7 and Government Code § 12650 from the commencement of the statutory period through the time of trial.

8. Declaratory relief that Defendants' policies and practices are unlawful.

9. That Defendants further be enjoined to cease and desist from unlawful activities and adopt new policies and practices that will prevent discrimination.

10. Recovery of all reasonable attorneys' fees, expert witness fees, litigation expenses and costs incurred in the filing and prosecution of this action under each of the identified statutes, and under § 1021.5 of the California Code of Civil Procedure; and

11. Such other and further relief as the Court may deem proper.

## DEMAND FOR A JURY TRIAL

Relator-Plaintiff hereby demands a jury trial on all issues so triable.

DATED: March 2, 2017

Respectfully submitted,

BRYAN SCHWARTZ LAW
TYCKO & ZAVAREEI

By: ______________________

Bryan Schwartz (SBN 209903)
Logan Talbot (SBN 300591)
Kristen L. Sagafi (SBN 222249)

Attorneys for Relator
ALMEA LUIS

# EXHIBIT A

Gmail

FW: Complaint

1 message

**Almea Luis** <Almea.Luis@vitas.com> Mon, Aug 1, 2016 at 11:22 PM
To: "almea.t.luis@gmail.com" <almea.t.luis@gmail.com>

**From:** Almea Luis
**Sent:** Tuesday, July 19, 2016 3:17 PM
**To:** Rosslyn Stenson; Eliana Brown
**Subject:** Complaint
**Importance:** High

Hi Roz and Eliana,

I want to file a formal complaint against Brian Pienta and Bruce Davis who have retaliated against me because I have persisted in reporting unacceptable and irregular practices by our program's admissions team, which are clear violations of federal regulations.

The violations happen regularly and there have been no attempts to hold the Admissions Manager accountable, nor have employees received proper training or been counselled. I have not been allowed to provide clinical oversight of the admission nurses, who report to a social worker. I have reported and provided extensive documentation to Brian and Bruce of the violations which include the inappropriate hospice admissions of patients who are clearly not terminally ill; the admission of competent adults without obtaining informed consent; and the social worker manager clearly working outside of her scope of practice and making medication related decisions. In response to my complaints I was assigned a different NPCA without any legitimate reason given; rather I was informed by my GM that this NPCA had been kicked out of other CA programs that complained about his lack of knowledge of Vitas standards and challenging communication style. Despite reporting to both Bruce and Brian that this reassignment was incredibly stressful and that I already had an increased workload daily due to the ongoing compliance issues from admissions, I was not offered any support. Instead, I was repeatedly informed by Brian that I was the problem. As a result of the concerns I raised regarding admissions, I was told by Brian that I was behaving unprofessionally and disrespectfully towards the admissions manager. He repeatedly told me I was causing discord and tension in the program and that admissions issues could not be worked on until I first changed my attitude. These violations by the admissions team remain unaddressed despite clearly violating medicare regs.

As a result of the lack of support and being targeted by Brian, I emailed Bruce on 7/6 of my intent to resign. I did not submit a signed resignation letter. Bruce neither acknowledged nor accepted my notice. On 7/8 I informed Brian that I was extremely stressed out and unsure that I wanted to leave the program. He advised I should take the weekend to think about it and we would meet on Monday. Due to the state audit we did not meet on Monday, and Brian cancelled

our meeting for the following day. When he was available to meet on 7/15 I informed him that I was committed to remaining in the PCA role and did not wish to leave. On 7/18 I again informed him that I was revoking my resignation and at that point he finally clearly told me I would not be allowed to remain in the PCA role, despite the fact that I have worked at Vitas for approximately 8 years and had consistently received very strong performance evaluations and frequent, extremely positive feedback from my managers up until the retaliation began.

I am not voluntarily leaving the PCA role. It is unacceptable that this is the information Brian is giving the teams. Clearly there is no legitimate reason for me to not remain as PCA. No one has been trained for the job and the position has not even been posted internally. The refusal to allow me to stay is pure retaliation and I fear increased retaliation once I return to the office on Friday. This is a violation of my employee rights and is affecting my health and wellbeing.

Again, my departure is not voluntary. I ask that Brian immediately stop disseminating misinformation to the program about my pending departure.

Thank you,

Almea Luis RN

Patient Care Administrator Program 91

VITAS Innovative Hospice

355 Lennon Lane, Suite 150

office (925) 930-9373

fax (925) 945-3850

VITAS Healthcare

IMPORTANT NOTICE: This email contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by Federal Law. It is intended for the recipient only. If you receive this email in error, please delete the materials and contact the sender of the email at VITAS immediately. The dissemination, distribution or copying of the material is strictly prohibited. Thank you.

# EXHIBIT B

# Revenue By Program / Pay Type

Between 01/01/11 and 12/30/11

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 263,949,018.03 | 213,778,859.28 | 39,452,039.81 | 0.00 | 36,593.91 | 3,784.05 | 9,640,647.12 | 81,395.09 | 0.00 | 1,059,507.39 |
| 91 | 20,925,518.00 | 17,731,860.27 | 2,673,251.30 | 0.00 | -8,260.20 | 0.00 | 381,626.73 | 2,251.39 | 0.00 | 145,613.79 |
| 92 | 16,602,590.26 | 13,516,039.43 | 2,353,248.12 | 0.00 | -1,674.29 | -166.25 | 709,028.32 | 3,665.10 | 0.00 | 35,478.34 |
| 93 | 25,582,187.48 | 23,273,784.57 | 1,437,024.05 | 0.00 | 1,825.14 | 0.00 | 862,892.52 | 9,999.77 | 0.00 | 10,367.14 |
| 94 | 18,722,423.82 | 14,688,261.96 | 2,538,795.20 | 0.00 | 24,087.81 | 0.00 | 1,422,779.24 | 14,749.73 | 0.00 | 50,853.06 |
| 95 | 24,977,772.07 | 18,498,224.93 | 5,994,636.34 | 0.00 | -2,720.76 | 3,546.75 | 390,459.01 | 1,961.35 | 0.00 | 104,764.58 |
| 96 | 37,011,522.93 | 30,247,209.57 | 5,201,945.28 | 0.00 | 10,332.53 | 0.00 | 1,475,842.04 | 15,068.19 | 0.00 | 72,688.15 |
| 97 | 45,738,772.51 | 36,863,936.26 | 6,657,866.67 | 0.00 | 3,074.54 | 0.00 | 2,101,200.24 | 17,030.95 | 0.00 | 115,971.10 |
| 98 | 48,282,089.89 | 37,722,671.92 | 8,869,330.25 | 0.00 | 9,929.14 | 0.00 | 1,323,020.73 | 14,226.42 | 0.00 | 340,279.48 |
| 99 | 26,106,141.08 | 21,236,870.37 | 3,725,942.60 | 0.00 | 0.00 | 403.55 | 973,798.29 | 2,442.19 | 0.00 | 183,491.76 |

# Revenue By Program / Pay Type

Between 01/01/12 and 12/30/12

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 287,595,741.36 | 232,594,699.78 | 46,933,513.76 | 0.00 | 54,020.47 | 4,698.91 | 7,012,970.76 | 148,283.61 | 0.00 | 933,120.75 |
| 91 | 26,811,759.38 | 22,040,591.91 | 4,108,597.34 | 0.00 | 26,787.30 | 0.00 | 544,393.16 | 10,067.16 | 0.00 | 86,430.12 |
| 92 | 16,836,298.83 | 13,482,344.17 | 2,641,083.83 | 0.00 | 5,171.66 | 0.00 | 605,903.29 | 24,027.63 | 0.00 | 97,343.26 |
| 93 | 28,178,506.73 | 25,852,180.56 | 1,784,493.61 | 0.00 | 0.00 | 0.00 | 504,912.70 | 39,030.88 | 0.00 | 355.82 |
| 94 | 17,065,210.40 | 12,146,007.02 | 4,213,259.70 | 0.00 | -2,029.25 | 0.00 | 619,530.54 | 8,086.56 | 0.00 | 93,880.60 |
| 95 | 26,872,796.30 | 20,084,290.32 | 6,203,237.65 | 0.00 | 31,787.91 | 4,698.91 | 490,460.14 | 6,226.49 | 0.00 | 62,981.99 |
| 96 | 39,141,962.72 | 32,239,554.06 | 5,571,261.41 | 0.00 | -18,930.14 | 0.00 | 1,315,212.53 | 20,363.74 | 0.00 | 8,464.96 |
| 97 | 45,769,297.77 | 37,074,811.62 | 7,254,027.82 | 0.00 | 11,222.98 | 0.00 | 1,253,225.32 | 15,586.71 | 0.00 | 170,732.34 |
| 98 | 54,954,011.82 | 43,746,376.66 | 9,771,088.84 | 0.00 | 0.00 | 0.00 | 1,141,957.86 | 17,261.61 | 0.00 | 297,369.44 |
| 99 | 31,965,897.41 | 25,928,543.46 | 5,386,463.54 | 0.00 | 0.00 | 0.00 | 537,375.22 | 7,632.83 | 0.00 | 115,562.23 |

# Revenue By Program / Pay Type

Between 01/01/13 and 12/30/13

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 278,864,839.38 | 228,265,321.58 | 45,160,208.19 | 0.00 | 12,879.25 | 16,919.02 | 7,372,962.20 | 120,663.75 | 0.00 | 1,046,987.28 |
| 91 | 29,646,210.79 | 24,450,144.00 | 4,674,895.94 | 0.00 | -33,239.91 | 0.00 | 842,747.42 | 10,655.74 | 0.00 | 25,896.80 |
| 92 | 16,213,473.15 | 12,707,061.76 | 2,880,536.13 | 0.00 | 26,631.96 | 0.00 | 669,794.95 | 24,980.90 | 0.00 | 79,333.25 |
| 93 | 23,560,709.34 | 21,363,798.74 | 1,842,489.70 | 0.00 | 3,144.57 | 1,867.02 | 522,614.45 | 14,211.08 | 0.00 | 95,115.04 |
| 94 | 14,687,660.69 | 10,283,463.38 | 3,686,087.03 | 0.00 | 9,628.25 | 0.00 | 727,875.43 | 19,953.95 | 0.00 | 110,344.34 |
| 95 | 24,898,214.82 | 18,480,473.99 | 5,877,165.93 | 0.00 | -11,544.06 | 15,052.00 | 623,268.92 | 11,345.69 | 0.00 | 158,080.58 |
| 96 | 35,260,912.50 | 30,196,515.75 | 4,260,929.82 | 0.00 | 24,380.41 | 0.00 | 1,155,820.25 | 13,902.99 | 0.00 | 74,415.07 |
| 97 | 43,423,992.15 | 35,551,782.67 | 7,037,760.14 | 0.00 | 0.00 | 0.00 | 1,158,266.51 | 6,802.07 | 0.00 | 137,639.90 |
| 98 | 55,719,021.30 | 45,370,794.56 | 9,725,410.38 | 0.00 | 0.00 | 0.00 | 910,446.63 | 14,564.91 | 0.00 | 317,706.08 |
| 99 | 35,454,644.64 | 29,861,286.73 | 5,174,933.12 | 0.00 | -6,121.96 | 0.00 | 762,127.63 | 4,246.42 | 0.00 | 48,456.22 |

# Revenue By Program / Pay Type

Between 01/01/14 and 12/30/14

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 268,501,204.36 | 219,532,261.57 | 45,259,990.40 | 0.00 | -322.32 | 5,100.00 | 7,005,176.94 | 52,528.49 | 0.00 | 1,257,747.48 |
| 91 | 33,702,727.49 | 29,122,356.00 | 4,410,402.54 | 0.00 | 0.00 | 0.00 | 641,540.59 | 5,166.00 | 0.00 | 108,698.12 |
| 92 | 15,832,479.23 | 13,015,868.68 | 2,455,916.41 | 0.00 | -22,583.74 | 0.00 | 600,104.01 | 18,937.48 | 0.00 | 33,792.49 |
| 93 | 26,794,186.03 | 23,145,540.21 | 3,448,499.01 | 0.00 | 3,408.93 | 0.00 | 522,713.76 | 13,046.63 | 0.00 | 111,847.11 |
| 94 | 12,995,078.08 | 9,514,008.80 | 2,987,368.41 | 0.00 | 5,558.19 | 0.00 | 598,955.50 | 1,456.86 | 0.00 | 98,178.12 |
| 95 | 20,484,067.13 | 15,215,082.94 | 4,969,205.27 | 0.00 | 16,491.80 | 5,100.00 | 499,774.37 | 6,859.91 | 0.00 | 81,903.06 |
| 96 | 34,727,192.26 | 28,951,293.35 | 4,964,620.09 | 0.00 | -5,030.68 | 0.00 | 1,351,207.25 | 6,756.18 | 0.00 | 137,501.03 |
| 97 | 35,360,589.93 | 28,304,823.97 | 6,450,310.35 | 0.00 | 1,833.17 | 0.00 | 986,566.03 | 17,625.94 | 0.00 | 222,160.62 |
| 98 | 53,803,987.51 | 43,513,372.11 | 10,033,811.29 | 0.00 | 0.00 | 0.00 | 891,052.99 | -12,594.53 | 0.00 | 276,529.88 |
| 99 | 34,800,896.69 | 28,749,915.51 | 5,539,857.03 | 0.00 | 0.00 | 0.00 | 913,262.45 | -4,725.98 | 0.00 | 187,137.05 |

# Revenue By Program / Pay Type

Between 01/01/15 and 12/30/15

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 275,039,057.95 | 223,439,459.87 | 20,019,627.03 | 27,095,665.50 | 106,899.07 | -1,115.00 | 7,785,235.96 | 67,727.55 | 0.00 | 1,126,471.81 |
| 91 | 37,502,090.95 | 31,147,897.84 | 4,036,872.62 | 1,845,944.03 | 65,935.89 | 0.00 | 933,087.76 | 2,981.63 | 0.00 | 95,405.62 |
| 92 | 17,573,924.18 | 14,252,097.96 | 951,164.67 | 2,044,341.64 | 0.00 | 0.00 | 540,683.67 | 6,789.90 | 0.00 | 69,594.03 |
| 93 | 27,347,440.97 | 23,288,357.19 | 321,311.44 | 3,409,667.38 | 30,531.09 | 500.00 | 713,694.23 | 9,070.37 | 0.00 | 53,372.94 |
| 94 | 13,094,177.53 | 9,126,148.08 | 944,627.77 | 2,562,789.01 | -2,603.70 | 0.00 | 434,179.05 | 2,553.63 | 0.00 | 214,208.22 |
| 95 | 20,592,142.72 | 15,873,587.05 | 1,068,199.58 | 3,107,269.77 | 0.00 | -1,615.00 | 705,659.66 | 4,630.97 | 0.00 | 160,958.08 |
| 96 | 35,140,929.55 | 29,343,645.43 | 1,631,275.06 | 3,454,426.06 | 11,809.40 | 0.00 | 1,234,560.18 | 4,806.63 | 0.00 | 112,891.22 |
| 97 | 33,544,174.79 | 26,741,110.28 | 1,775,770.26 | 4,358,266.42 | 749.28 | 0.00 | 1,071,238.65 | 21,910.51 | 0.00 | 129,500.48 |
| 98 | 53,321,095.36 | 42,776,365.56 | 5,931,081.39 | 4,055,394.20 | 477.12 | 0.00 | 1,245,101.89 | 9,261.35 | 0.00 | 178,537.29 |
| 99 | 36,923,081.89 | 30,890,250.51 | 3,359,324.25 | 2,257,566.99 | 0.00 | 0.00 | 907,030.86 | 5,722.56 | 0.00 | 112,011.92 |

# Revenue By Program / Pay Type

Between 01/01/16 and 12/30/16

| Pgm | Total | Medicare | Medicaid | Mgd Medicaid | Pending | Ins FFS | Ins Per Diem | Self Pay | State/HRS | Charity |
|---|---|---|---|---|---|---|---|---|---|---|
| * | 165,827,573.06 | 134,439,221.08 | 11,838,714.28 | 17,314,753.02 | -21,302.56 | 775.57 | 4,453,934.95 | 46,016.55 | 0.00 | 577,723.60 |
| 91 | 23,596,832.80 | 18,872,565.65 | 3,106,624.65 | [illegible] | -29,270.26 | 0.00 | 437,491.91 | 4,596.77 | 0.00 | 88,183.07 |
| 92 | 11,142,685.21 | 9,333,812.03 | 478,886.43 | 1,067,768.60 | 1,848.87 | 0.00 | 397,818.77 | 4,519.03 | 0.00 | 40,733.57 |
| 93 | 17,874,639.35 | 14,700,126.89 | 167,141.76 | 2,680,890.61 | -3,169.46 | 423.57 | 587,950.31 | 16,163.93 | 0.00 | 38,372.39 |
| 94 | 7,354,609.94 | 5,004,883.73 | 481,829.29 | 1,508,530.65 | -3,177.84 | 0.00 | 360,456.40 | 6,101.50 | 0.00 | 103,223.40 |
| 95 | 11,968,310.22 | 9,720,579.41 | 583,208.33 | 1,435,984.91 | 0.00 | 0.00 | 386,186.15 | 699.86 | 0.00 | 54,212.12 |
| 96 | 19,282,721.33 | 16,197,584.86 | 902,816.86 | 1,982,163.02 | 2,044.54 | 0.00 | 514,505.54 | -554.88 | 0.00 | 23,363.35 |
| 97 | 17,889,802.64 | 14,227,889.31 | 806,000.46 | 2,692,987.69 | 4,116.17 | 0.00 | 362,384.05 | 1,596.43 | 0.00 | 115,719.39 |
| 98 | 30,314,734.04 | 24,482,973.64 | 2,641,520.36 | 2,848,827.23 | 0.00 | 352.00 | 731,982.33 | 9,107.93 | 0.00 | 107,050.08 |
| 99 | 26,403,237.53 | 21,898,795.56 | 2,670,686.13 | 1,588,504.13 | 6,305.42 | 0.00 | 675,159.48 | 3,785.98 | 0.00 | 6,866.23 |

# EXHIBIT C

Gmail

# FW: RE:

**Almea Luis** <Almea.Luis@vitas.com> Tue, Aug 2, 2016 at 12:23 AM
To: "almea.t.luis@gmail.com" <almea.t.luis@gmail.com>

**From:** Bruce A. Davis
**Sent:** Wednesday, February 10, 2016 8:45 AM
**To:** Almea Luis
**Subject:** RE: RE:

That's fine.

I did review this with Jill last night. I also received an invitation regarding what I assume is this issue from Brian with Charity and Dr. Voskanian for Monday. In the future please call me if you have something blowing up. I am available.

Let's talk around 10 your time. Call me on my cell phone

**From:** Almea Luis
**Sent:** Wednesday, February 10, 2016 8:03 AM
**To:** Bruce A. Davis
**Subject:** RE: RE:

I've got a meeting w/ Heather right after Stand Down. How about around 10?

**From:** Bruce A. Davis
**Sent:** Wednesday, February 10, 2016 6:07 AM
**To:** Almea Luis
**Subject:** Re: RE:

Almea call me and we can discuss this. Call after your stand up meeting

Bruce A. Davis

General Manager

VITAS-Innovatve Hospice Care

Program-91, East Bay

505-401-1809

On Feb 9, 2016, at 11:49 PM, Almea Luis <Almea.Luis@vitas.com> wrote:

Thursday 5pm, Friday 9am. I know we'll prep, however do you have any idea of how much time we need to allot?

There have been a slew of issues since the weekend. I'm really concerned, given how closely we've been working with admissions. We had a near service issue related to admissions withholding info from the clinical team on Friday about a pt who was dissatisfied w/ Voltaire's admit & thus refusing a visit upon arrival home. Admission's version was pt refused the visit simply because she was exhausted. I became aware of this because CCRMC contacted us to complain about ARN. Admissions had been given the info as well as the request to not send out male staff, but didn't share it in Friday Stand Down or subsequently as we were staffing for the weekend—we staffed the pt for an ICA w/ John Zhang the following day, which obviously was a set up for a service failure. Anyway, we were able to correct it due to CCRMC's report but there was a lot of back & forth needlessly Friday night & it would've made much more sense for admissions to tell us directly since they were aware of the complaint as they headed into our Stand Down.

There was a second pt over the weekend who was d/c'd from the hospital & very quickly was readmitted because he was in pain & had no meds in the home. Jill spoke to the referring & reports he was furious. Pt is now back home & on service. I asked Jill to follow up on lack of meds & explained to her the process of local fills & ProCare, which she should absolutely be crystal clear on at this point. There is a very limited piece of ProCare info that admissions has to deal with & it has been covered extensively in training & continues to be covered in AM calls & the emails from corp. Jill keeps saying she was on PTO during ProCare transition so is clueless, however there has been nonstop training on this. Nonetheless, I informed her of the process so that she could f/u w/ her nurse. I followed up with her today to find out what the hang up was & her response was, "It had nothing to do with my nurse. She had no way of knowing there was an issue." She relayed her nurse's explanation that pt had not been admitted in Vx so meds could not be obtained locally; & AN had no way of knowing that there were any issues. Furthermore Jill wanted to know why telecare hadn't contacted ProCare & why an after hours nurse hadn't called ProCare. She had absolutely no clue what she was talking about so not only was there absolutely no way for her to hold her staff accountable, but there was no way for her to help her staff better understand the process (the process is the AN must admit the pt to ProCare 100% of the time otherwise Solano cannot deliver meds; a pt's Vx status is irrelevant as long as AN had admitted pt to ProCare). I am really frustrated at her lack of knowledge about admissions. It further complicates things that she defaults to thinking she is being unfairly targeted when the reality is, she has a very poor understanding of the role & responsibilities, as well as the workflow of the people she manages. She has become out of touch with what her staff do so she can't guide them.

Another issue: The dobutamine drip pt. I feel really badly that I was not more involved in the conversation about this VA pt as he was being referred. Dr. Freedman & I were on the same page as far as an aversion to taking the pt on however I was tied up in meetings the entire Thursday so was not able to really support him in his opposition to admitting this pt. The pt came on service Friday. There were issues with his drip, possibly due to our staff's lack of knowledge handling his pump. There was an

interruption in the infusion on Saturday. He coded & was sent to the hospital, where he died. Cindy Thomas did bereavement on Monday. It sounds like the family is OK, however I will let you know if anything comes up during subsequent bereavement. What I & Dr. Freedman really need is an environment that is more conducive to having conversations about whether or not we can handle these complicated cases. We need space to identify what we need to do so that we are responsibly accepting a pt onto care. I say this because Jill came to me the day after admit to let me know that she was livid that Dr. Freedman had initially tried to block the admission so she said she contacted you & Dr. Beaty &- these were not her words, but exactly the impression she gave me-you guys threw your weight behind her to make Dr. Freedman come around & admit the pt. I am not saying I believe her version. But I am saying that she bills it as some sort of competition that she won, & this kind of approach does not lend to a good atmosphere for collaboration.

Dr. Freedman & I met w/ Jill yesterday & primarily discussed the need for HMD involvement in complicated admissions (whether due to questions about appropriateness or due to treatment/meds). Dr. Freedman clearly told Jill he needed to be called any time there was any sort of complicated case. We reviewed the dobutamine drip case & had a protracted discussion about the need for ARNs to call Dr. Freedman. So then admissions later gets a referral for this bipap pt who has been agitated, on 4 point restraints in the hospital, ARN gets order for ICC & pt is discharged home despite lack of any available ICC nurse during the night. None of this was brought to our attention during Stand Down & Dr. Freedman wasn't involved at all by admissions. Dr. Freedman & I were both on call last night & we got the calls from 256 as soon as pt arrived home because of course he couldn't breathe, was agitated, & we had no way of giving meds because pt turned blue as soon as the bipap was removed & he couldn't be turned to his side for rectal med administration again due to his symptoms. And then again, no ICC nurse so RN stayed there until we could free up ICC nurse by calling in Cindy. & the ARN had only ordered a limited amount of comfort meds as if there had been no way to anticipate this particular pt would not be touched by your standard 5mg of morphine dose. 256 had to order more meds within an hour of him arriving home.

Bruce, how do we improve this? Besides these pt care issues, there's been some acting out since our meeting on Friday. I always invite admissions to my TM meetings as a courtesy, of course I expect ideally some participation or at the very least polite attention, however Jill & Stephanie chatted with each other, quite loudly & it was definitely disruptive, texted; at one point as I was talking I heard Stephanie loudly half-whisper to Jill, "why are we here?" Yes, I absolutely should've checked the behavior however I was also sensitive to the fact that they must have been feeling quite raw from our earlier meeting. However, they really should just then not have shown up to mine, or should've just left the meeting if they weren't engaged. I'm finding it very challenging to work with them, as I know Dr. Freedman is. He & I have found admissions to be the biggest challenge as we've taken on our new roles.

**From:** Bruce A. Davis
**Sent:** Tuesday, February 09, 2016 8:12 PM
**To:** Almea Luis
**Subject:**

Almea,

What time is the ICC meeting on Thursday and Friday? I know Brian wants to have a conversation at some point with both you and I around the verbiage and talking points for that meeting.

I would also like to discuss the Issues that occurred today with Dr. Freedman and the patient in Manteca the other day. I have been asked to be on a call with Dr. Voskanian, Charity and Brian on Monday. Let me know if you can make yourself available for a conversation around 1:15 to 1:30 your time to discuss. I plan to take a cab to the airport around 1:00 your time tomorrow.

B.D.

# EXHIBIT D

Gmail

# FW: Dr. Johnson

**Almea Luis** <Almea.Luis@vitas.com> Tue, Aug 23, 2016 at 8:46 AM
To: "almea.t.luis@gmail.com" <almea.t.luis@gmail.com>

**From:** Bruce A. Davis
**Sent:** Wednesday, April 20, 2016 11:13 AM
**To:** Steven Freedman; Almea Luis
**Subject:** RE: Dr. Johnson

Steve and Almea,

I have done a lot of thinking about this Dr. Johnson thing since yesterday. I know he is spinning out of control thinking he is not doing a good job for us. There are a few things I think we could do to rectify this with him.

- First, he needs to know that these are areas he can improve on. His impression is that he has been written up.

- One of the items had to do with the use of Ativan as it relates to his practice of the use of that med. He shared with you that this is what the nurses order and he goes along with it. I think we should then use this as an opportunity to have him get in front of his team to educate everyone on the appropriate use of this medication. I see no reason not to take his perspective on this and then run it in this direction showing him that we hear him and need to come up with a plan to resolve it with the team and see where it goes from there.

- Not being available for visits – This is really a program wide issue and until we have a mechanism in place to support the teams with symptom visits we should recognize that and work on a plan to fix it. Obviously, it isn't easy to find visit only Docs. It's also hard to put this on him at this time as he is covering two teams and doing most of the admissions. We need to get him down to one Team as we discussed in our meeting yesterday. That holds true for both Dr. Beaty and Dr. Johnson. Symptom visits would be easier to manage in that situation.

- As far as the certification information not matching up with the patient. This needs to be corrected. He needs to be shown examples (as you suggest below in your e-mail). He needs to see the disconnect between what he is putting in his certification documents and what the patient really looks like. As with people with memory deficits go. They need to have systems in place to ensure that they are able to correctly go back to notes to put the correct information in a note. As Dr. Johnson can do as many as 9 or 10 admissions in a day this could get mixed up in his note book. I understand he writes the patients name down, takes notes and then refers back to that patient when he does his dictations. He should show you his process so we can identify a fix for it since the information is being mixed up. We should be able to go to a day when he had these disconnects and go to his notebook to see what he put in his notes. He should then be able to see where this is going wrong and come up with another practice or tool to address it.

- As far as the overall content (when it is right) we need to understand how detailed physician certs are. We should compare his to his peers when they do admissions. Not just yours Steve. Let's be fair to the process and ensure that everyone is meeting the standards we have for initial and recertification documentation.

Let me know if you have any questions or concerns regarding my thoughts on this matter. We can discuss tomorrow Steve when you are available.

Thank you

B.D.

Bruce A. Davis

Senior General Manager

VITAS Healthcare

East Bay, Program-91

355 Lennon Lane, Suite 150

Walnut Creek, CA 94598

Office: (925) 930-9373 ext. 3825

Fax: (925) 945-3981

**From:** Steven Freedman
**Sent:** Tuesday, April 19, 2016 6:55 PM
**To:** Bruce A. Davis; Almea Luis
**Subject:** RE: Dr. Johnson

I am covering 4 teams the next 3 days with Dr. Beaty away. I am on call Mon-Wed in addition.

I have Team 249 tomorrow AM.

Dr. Beaty had led me to believe I didn't have to do any team meetings. I have to check into whether I will be doing 252 Thursday AM. Almea, do you know?

As to tomorrow, I could meet between 1:30-3:30, after that I have to do a family meeting.

I was as deferential and supportive as could be, empathetic, collaborative, emphasizing the good and his contributions. I also did him the favor of proctoring those same charts and writing a detailed report, as required by the Medical Board, saying his performance was up to community standards and without deficiency. That was a stretch, for the record, but I figured I could justify it because lots of Hospice docs just go through the motions, Dr. B tells me.

Yes, we want to keep him, and he has us over a barrel without anyone else on the horizon, but I think we need to decide whether these things matter and whether I should continue to advocate clinical quality or just let that go. I am not going to pursue it further without 100% backing by SM.

I want to hear what he had to say and what you guys think, and I will bring some of the records I reviewed so that you have a sense of the dimensions of his inadequate performance. This part was black and white, and I had offered him, before speaking to you guys, to remove the 3 areas that he disputed, so I don't know what his gripe is and what needs to be "repaired." I am the first to apologize for missteps, but I reviewed this with both of you, and sent it to Forrest for review (which he failed to get back to me, but we had discussed virtually all of the issues in the past), and I was as gentle and kind as could be. I don't feel like I have anything to repair, frankly.

Certainly, my life will be better and my stress less if I back off, as everyone has done previously. So what I'll need to know is what is the accountability and consequences because I cannot have this be a me vs him type of situation.

Oy, as they say. Thanks, Bruce.

Steve

Steven Freedman, MD
Hospice Medical Director
VITAS Hospice Alameda Contra Costa Counties
355 Lennon Lane
Walnut Creek, CA 94598
(925) 945-3940 Voicemail
(925) 930-9373 Office
(925) 945-9850 Fax
Certifications: Hospice and Palliative Care, Hospice Medical Director

**IMPORTANT NOTICE: This mail contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by the Health Insurance Portability and Accountability Act of 1996. This confidential patient information is intended for the recipient only. If you receive this transmission in error, please destroy the faxed materials and contact the sender indicated above at VITAS immediately. The dissemination, distribution or copying of this material is strictly prohibited. Thank you.**

**From:** Bruce A. Davis
**Sent:** Tuesday, April 19, 2016 5:49 PM
**To:** Steven Freedman; Almea Luis
**Subject:** Dr. Johnson

Let's talk tomorrow about Dr. Johnson.

He is not doing well with his review today. I know we all agree we want to keep Dr. Johnson. He has been a very loyal physician. I understand he needs to improve some of his work. This is what happens when our employees really don't get the support and education they need to excel in their jobs. Not slamming Dr. Beaty but managing Doctors was definitely not an area he liked, so he avoided it as much as possible.

Almea and I discussed some options on how we might be able to repair this. Let's discuss it when you have time tomorrow. I only have two items on my calendar tomorrow. My afternoon is clear.

Let me know.

Thanks,

B.D.

Bruce A. Davis

Senior General Manager

VITAS Healthcare

East Bay, Program-91

355 Lennon Lane, Suite 150

Walnut Creek, CA 94598

Office: (925) 930-9373 ext. 3825

Fax: (925) 945-3981

**Almea Luis** <Almea.Luis@vitas.com> Tue, Aug 23, 2016 at 10:34 AM
To: "almea.t.luis@gmail.com" <almea.t.luis@gmail.com>

**From:** Bruce A. Davis
**Sent:** Wednesday, April 20, 2016 5:23 PM
**To:** Steven Freedman; Almea Luis
**Subject:** Dr. Johnson

Steve,

It would appear that you had already calmed the waters for Dr. Johnson before I met with him. He told me you two talked in the parking lot before he came in to see me. Following is what I discussed with him

- I told him we value his services to the program and that he needs to adapt to the changes in leadership from the HMD position.
- I told him I support your (Steve) efforts in improving the program and making sure we are able to hold up against internal or external surveys or audits, and that it was your job (Steve) to ensure we can do that.
- I told him hHe needs to improve his documentation as it does not meet the needs of our documentation requirements nor will the ones I looked at support a billing review by Medicare. He agreed that he needed to do a better job of painting the picture of a hospice patient on both his initial certifications and his re-certifications. He also told me he would work with you Steve to make sure he is doing it better going forward. He told me he would refer more to the LCD's and other documents he has to make sure his documentation comes up to par.
- I discussed with him that I was concerned that he was overwhelmed and that we need to find more doctors to support the program and get him back to .75 FTE so that he can be more thorough with his work.

He said he gets it and will move forward in a positive manner.

Let me know how your next encounter goes with him and let me know if his documentation is improving.

Thank you,

B.D.

Bruce A. Davis

Senior General Manager

VITAS Healthcare

East Bay, Program-91

355 Lennon Lane, Suite 150

Walnut Creek, CA 94598

Office: (925) 930-9373 ext. 3825

Fax: (925) 945-3981

**Almea Luis** <almea.t.luis@gmail.com> Tue, Aug 23, 2016 at 3:13 PM
To: Steve Freedman <freesteve@comcast.net>

[Quoted text hidden]

# EXHIBIT E

**Almea Luis**

| | |
|---|---|
| **'rom:** | Steven Freedman |
| **Sent:** | Tuesday, July 05, 2016 12:22 PM |
| **To:** | Brian Pienta; Almea Luis |
| **Subject:** | RE: Another invalid consent for Hospice |

Thanks. I admire your persistence. However, plugging away hasn't worked for 10 or so years. Nor have recent educational efforts by Almea and me because there is no followup and no accountability. Jill has never provided that other than when one of us calls a mistake to her attention.

It will not work unless Jill understands that each of these dozen(s) daily errors are not simply the result of ARN's not listening or however she frames it in her blaming fashion. She needs to understand that these are systems problems.

Unfortunately, it seems like every system in admissions is broken. I think her performance improvement plan needs to identify these and the remedies and timeline for their repair.

Thanks.

Steven Freedman, MD
Hospice Medical Director
VITAS Hospice Alameda, Contra Costa, & San Joaquin Counties
355 Lennon Lane
Walnut Creek, CA 94598
(925) 945-3940 Voicemail
(925) 930-9373 Office
925) 945-9850 Fax
Certifications: Hospice and Palliative Care, Hospice Medical Director

IMPORTANT NOTICE: This mail contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by the Health Insurance Portability and Accountability Act of 1996. This confidential patient information is intended for the recipient only. If you receive this transmission in error, please destroy the faxed materials and contact the sender indicated above at VITAS immediately. The dissemination, distribution or copying of this material is strictly prohibited. Thank you.

---

**From:** Brian Pienta
**Sent:** Tuesday, July 05, 2016 11:45 AM
**To:** Almea Luis; Steven Freedman
**Subject:** RE: Another invalid consent for Hospice

Hi,

I will address this with Jill. I noticed it yesterday as well. We will keep plugging away and reduce these issues.

Thanks,
Brian

---

**From:** Almea Luis
**Sent:** Tuesday, July 05, 2016 11:31 AM
**To:** Steven Freedman
**'c:** Brian Pienta
**Subject:** RE: Another invalid consent for Hospice

Brian followed up with admissions on Santos case. I don't know if any education has gone out to the team.

Although I am available to help start the process of educating the admissions team, I admit I am somewhat reluctant to be involved in another meeting I'll get kicked out of since Jill will not agree with the idea of informed consent. Jill sends a message loud & clear to the ALs & ARNs that they should not directly talk about hospice if it will impact the pt's decision o sign on—I know this from being one of her nurses, although I always fully disclosed.
I don't know how to help make the education happen for admissions.

---

**From:** Steven Freedman
**Sent:** Tuesday, July 05, 2016 11:01 AM
**To:** Almea Luis
**Cc:** Brian Plenta
**Subject:** Another invalid consent for Hospice

Shirley Souza, 255
This patient, who has capacity, was signed onto Hospice deceptively.
Voltaire makes very clear that he told her that she was signing up for "comfort care," and the staff has been told not to use the word Hospice around her.
This was on 7/2.
Was admissions not told of this issue?
I have asked Betty to meet with daughter who instigated this and make a plan to disclose that she is on Hospice.
Thanks.

Steven Freedman, MD
Hospice Medical Director
VITAS Hospice Alameda, Contra Costa, & San Joaquin Counties
355 Lennon Lane
Walnut Creek, CA 94598
(925) 945-3940 Voicemail
325) 930-9373 Office
(925) 945-9850 Fax
Certifications: Hospice and Palliative Care, Hospice Medical Director

IMPORTANT NOTICE: This mail contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by the Health Insurance Portability and Accountability Act of 1996. This confidential patient information is intended for the recipient only. If you receive this transmission in error, please destroy the faxed materials and contact the sender indicated above at VITAS immediately. The dissemination, distribution or copying of this material is strictly prohibited. Thank you.

---

**From:** Voltaire Apse
**Sent:** Tuesday, July 05, 2016 10:44 AM
**To:** Steven Freedman
**Subject:** Re: Shirley Souza

Yes..

Sent from my iPhone

On Jul 5, 2016, at 10:40 AM, Steven Freedman <Steven.Freedman@vitas.com> wrote:

> Thanks very much.
> So the patient signed up for "comfort care," and the word Hospice was not used with her?
>
> Steven Freedman, MD
> Hospice Medical Director
> VITAS Hospice Alameda, Contra Costa, & San Joaquin Counties

355 Lennon Lane
Walnut Creek, CA 94598
(925) 945-3940 Voicemail
(925) 930-9373 Office
(925) 945-9850 Fax
Certifications: Hospice and Palliative Care, Hospice Medical Director

IMPORTANT NOTICE: This mail contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by the Health Insurance Portability and Accountability Act of 1996. This confidential patient information is intended for the recipient only. If you receive this transmission in error, please destroy the faxed materials and contact the sender indicated above at VITAS immediately. The dissemination, distribution or copying of this material is strictly prohibited. Thank you.

---

**From:** Voltaire Apse
**Sent:** Tuesday, July 05, 2016 10:19 AM
**To:** Steven Freedman
**Subject:** Re: Shirley Souza

I did the admission..the patient signed for herself back at the hospital..the neice wanted to use the word comfort care.

Sent from my iPhone

On Jul 5, 2016, at 10:17 AM, Steven Freedman <Steven.Freedman@vitas.com> wrote:

> Patient presented at IDG today.
> Daughter does not want us to say Hospice around her.
> I cannot tell who signed the consent.
> Did either of you discuss Hospice with the patient?
> Thanks.
>
> Steven Freedman, MD
> Hospice Medical Director
> VITAS Hospice Alameda, Contra Costa, & San Joaquin Counties
> 355 Lennon Lane
> Walnut Creek, CA 94598
> (925) 945-3940 Voicemail
> (925) 930-9373 Office
> (925) 945-9850 Fax
> Certifications: Hospice and Palliative Care, Hospice Medical Director
>
> IMPORTANT NOTICE: This mail contains Protected Health Information (PHI) that is CONFIDENTIAL and PROTECTED by the Health Insurance Portability and Accountability Act of 1996. This confidential patient information is intended for the recipient only. If you receive this transmission in error, please destroy the faxed materials and contact the sender indicated above at VITAS immediately. The dissemination, distribution or copying of this material is strictly prohibited. Thank you.

# EXHIBIT F

# Discharges Alive-Extended Prognosis

**Between 01/01/10 And 08/22/16**

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| **'rogram: 91** | | | | | |
| **Team: 249** | | | | | |
| Aldrich, Carol | 510-531-7190 | 10/12/13 | 11/18/15 | 767 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Alexander, Bertha | 510-836-3777 | 05/09/14 | 10/29/15 | 538 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Andrade, Dolores | 510-842-3192 | 01/26/16 | 07/19/16 | 175 Alive, Prognosis Ext | Other Alzheimer's disease |
| Barer, Malvin | 510-547-1162 | 01/24/16 | 04/19/16 | 86 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Brown , Louise | 510-655-7494 | 03/20/14 | 11/05/14 | 230 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Cacanindin, Filomena | 510-524-0517 | 03/27/12 | 11/05/14 | 953 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Campe, Charles | 510-748-4300 | 08/26/14 | 12/11/15 | 472 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Carlisle, Katherine | 510-655-7512 | 01/28/13 | 07/15/15 | 898 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Cox, Mary | 510-451-2805 | 12/10/15 | 06/06/16 | 179 Alive, Prognosis Ext | Heart disease, unspecified |
| Dodge, John | 510-261-8564 | 12/16/15 | 03/10/16 | 85 Alive, Prognosis Ext | Human immunodeficiency virus [HIV] |
| Donahue, Gwen | 510-523-0113 | 08/25/13 | 08/13/14 | 353 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Erickson, Blanche | 510-444-4684 | 09/18/14 | 03/04/15 | 167 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Floriani, Mary | 510-337-1033 | 01/23/16 | 07/18/16 | 177 Alive, Prognosis Ext | Heart disease, unspecified |
| Godec, Clarella | 510-234-2991 | 06/28/13 | 06/04/14 | 341 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Goldman, Doris | 510-227-5484 | 06/12/14 | 08/04/15 | 418 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Grant, Beulah | 510-444-4684 | 05/31/15 | 11/25/15 | 178 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Guevara Maximo, Gisselle | 510-619-4867 | 10/02/14 | 05/19/16 | 595 Alive, Prognosis Ext | Generalized idiopathic epilepsy and |
| Hatch, Ruth | 510-444-4684 | 08/12/13 | 10/03/14 | 417 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Hearne, Stana | 510-444-4684 | 07/13/13 | 07/02/14 | 354 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Hearne, Stana | 510-444-4684 | 05/01/15 | 08/28/15 | 119 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Jackson, Molly | 510-531-7190 | 08/07/15 | 01/28/16 | 174 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Jennings, Elizabeth | 510-654-7172 | 12/21/14 | 06/16/15 | 177 Alive, Prognosis Ext | Hemorrhage of Gastrointestinal Trac |
| Johnson, Arlannah | 510-871-0765 | 08/12/14 | 07/28/16 | 716 Alive, Prognosis Ext | Malignant neoplasm of brain, unspec |
| Johnston, Betty | 510-654-7172 | 08/01/14 | 07/21/15 | 354 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Jung, Leona | 510-531-7190 | 01/27/15 | 11/19/15 | 296 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| King, Eddie | 510-842-3192 | 02/27/15 | 12/22/15 | 298 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Lambertson, Jean | 510-338-3366 | 06/02/15 | 01/22/16 | 234 Alive, Prognosis Ext | Other cerebrovascular disease |
| Lynch, Gerald | 510-531-7190 | 05/16/15 | 01/07/16 | 236 Alive, Prognosis Ext | Parkinson's disease |
| MacGillivray, Margaret | 510-531-7190 | 01/10/15 | 12/30/15 | 354 Alive, Prognosis Ext | Other cerebrovascular disease |
| Martinez, Carlos | 510-493-3386 | 10/12/15 | 01/08/16 | 88 Alive, Prognosis Ext | Human immunodeficiency virus [HIV] |
| Masuoka, Margaret | 510-444-4684 | 08/07/15 | 04/01/16 | 238 Alive, Prognosis Ext | Cerebral infarction, unspecified |
| Mondello, Maureen | 510-522-1084 | 09/03/15 | 11/30/15 | 88 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Moss, William | 510-261-2628 | 08/28/14 | 07/22/15 | 328 Alive, Prognosis Ext | Malignant Neoplasm of the Bladder, |
| Moura, Michael | 510-848-1923 | 07/19/13 | 03/12/14 | 236 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Panietz, Jacob | 510-534-3637 | 09/07/15 | 04/06/16 | 212 Alive, Prognosis Ext | Heart disease, unspecified |
| Peoples, Mattie | 510-562-4969 | 01/15/14 | 05/06/14 | 111 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Pimentel, Arturo | 510-536-4134 | 02/25/15 | 06/24/15 | 119 Alive, Prognosis Ext | Congential Anomalies, Unspecified |
| Pont, Ethel | 510-531-7190 | 03/24/14 | 11/17/15 | 603 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Rahmgren, Dorothy | 510-724-2613 | 05/10/14 | 03/04/15 | 298 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Roa, Teresa | 510-533-4647 | 09/26/14 | 09/17/15 | 356 Alive, Prognosis Ext | Malignant neoplasm of colon, unspec |
| Rudinow Cohen, Naomi | 510-531-7190 | 04/26/13 | 10/08/15 | 895 Alive, Prognosis Ext | Lymphoblastic (diffuse) lymphoma, u |
| Salinas, Dorothy | 510-522-1084 | 06/28/15 | 08/24/15 | 57 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Soares, Robert | 510-842-3192 | 10/09/15 | 04/05/16 | 179 Alive, Prognosis Ext | Other Alzheimer's disease |
| Tichenor, Austin | 510-444-4684 | 11/07/14 | 02/03/15 | 88 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Tichenor, Austin | 510-444-4684 | 02/14/15 | 06/11/15 | 117 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Trinidad, Josefina | 415-724-1421 | 06/20/13 | 04/11/14 | 295 Alive, Prognosis Ext | Debility, Unspecified |
| Ventura, Antonia | 415-845-7897 | 11/28/14 | 02/25/15 | 89 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Ward, Sarah Jane | 510-444-4684 | 12/31/13 | 06/23/14 | 174 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Ward, Sarah Jane | 510-444-4684 | 06/25/15 | 08/21/15 | 57 Alive, Prognosis Ext | Cerebral Atherosclerosis |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| **Team: 249** | | | | | |
| Washington, Carneal | 510-724-5555 | 04/21/14 | 12/16/14 | 239 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Weir , Benjamin | 510-654-7172 | 02/12/16 | 05/26/16 | 104 Alive, Prognosis Ext | Heart disease, unspecified |
| Wickett, Trina | 510-536-6512 | 11/27/12 | 06/09/15 | 924 Alive, Prognosis Ext | Multiple Sclerosis |
| Wong, Beatrice | 510-835-5511 | 10/28/14 | 06/25/15 | 240 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| **Team: 250** | | | | | |
| Anderson, Barbara | 925-689-9222 | 01/27/12 | 05/20/13 | 479 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Barrett , Diana | 925-377-7900 | 02/23/13 | 05/22/13 | 88 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Birt, Margaret | 925-689-9222 | 04/06/15 | 10/21/15 | 198 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Brown, Herbert | 925-377-7900 | 04/14/13 | 09/25/13 | 164 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Buchignani, Christine | 925-254-6500 | 02/14/14 | 01/29/15 | 349 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Bullock, Diane | 925-798-3900 | 01/08/13 | 06/19/13 | 162 Alive, Prognosis Ext | Debility, Unspecified |
| Callagy, Mary | 925-935-6630 | 12/04/15 | 07/20/16 | 229 Alive, Prognosis Ext | Other Alzheimer's disease |
| Coleman, Helen Hibbard | 925-377-7900 | 11/04/11 | 05/17/13 | 560 Alive, Prognosis Ext | Arteriosclerotic Dementia w/Delirlu |
| Cooper-Kornes, Raisa | 925-689-2266 | 09/14/12 | 05/10/13 | 238 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Cox , Kimberly | 925-689-7457 | 02/18/14 | 12/04/14 | 289 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Crook, Dorothy | 925-377-7900 | 12/14/12 | 03/13/13 | 89 Alive, Prognosis Ext | Malignant neoplasm of pleura, unspe |
| Curry, Kathaleen | 925-933-7970 | 11/04/13 | 11/05/14 | 366 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| De La Torre Rosas , Pedro | 925-935-6630 | 01/29/13 | 03/20/14 | 415 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Delarue, Dolores | 925-825-4280 | 07/18/15 | 10/14/15 | 88 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Delgado, Jovita | 925-935-6630 | 06/09/15 | 12/03/15 | 177 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Dix, Delia | 925-849-6617 | 01/31/14 | 04/30/14 | 89 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Dumont, Rose | 925-457-7503 | 04/04/15 | 05/08/15 | 34 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Eckerley, C Leonard | 925-825-1300 | 06/13/14 | 12/08/14 | 178 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Elijan, Antonio | 925-935-6630 | 03/03/15 | 10/21/15 | 232 Alive, Prognosis Ext | Cerebral atherosclerosis |
| England, Charles | 925-691-1365 | 03/16/15 | 11/10/15 | 239 Alive, Prognosis Ext | Malignant neoplasm of pancreas, uns |
| Flint, Barbara | 925-939-2833 | 09/28/12 | 12/16/13 | 444 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Franco, Bismarck | 925-370-1082 | 09/13/14 | 09/01/15 | 353 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Frederickson , Betty | 925-376-8900 | 12/17/13 | 05/15/14 | 149 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Gasvoda , Clara | 925-798-3900 | 12/25/12 | 06/12/13 | 169 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Goldspring, Adelaide | 510-758-1122 | 11/09/13 | 04/11/14 | 153 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Gunther , Edna | 925-939-2833 | 03/29/13 | 02/05/14 | 313 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Hawksley, Virginia | 925-937-7300 | 07/02/12 | 03/14/13 | 255 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Huber, Donald | 925-939-2833 | 06/26/15 | 12/17/15 | 174 Alive, Prognosis Ext | Other frontotemporal dementia |
| Kifer, Catherine | 925-798-3900 | 07/26/12 | 07/16/13 | 355 Alive, Prognosis Ext | Debility, Unspecified |
| Kinney, Marilyn | 925-798-3900 | 05/15/15 | 11/18/15 | 187 Alive, Prognosis Ext | Chronic obstructive pulmonary disea |
| Kraft, Jean | 925-964-2075 | 02/24/15 | 12/17/15 | 296 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| LaBrie, Yvonne | 925-825-4280 | 12/02/15 | 07/06/16 | 217 Alive, Prognosis Ext | Other Alzheimer's disease |
| LeCourt, Aracelly | 925-798-3900 | 10/26/12 | 04/15/13 | 171 Alive, Prognosis Ext | Debility, Unspecified |
| Leon , Myron | 925-975-5000 | 09/25/13 | 02/11/14 | 139 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| McKay, Violet | 925-937-7300 | 08/31/12 | 06/24/13 | 297 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Milsner, Shirley | 925-939-5820 | 05/01/12 | 12/24/12 | 237 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Minami, Richard | 925-689-2266 | 10/09/13 | 03/31/14 | 173 Alive, Prognosis Ext | End Stage Chronic Renal Disease |
| Morthel , Emma | 925-939-5820 | 03/04/13 | 06/01/13 | 89 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Moura, Michael | 925-825-1300 | 03/10/15 | 05/07/15 | 58 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Neeland, Harold | 925-376-8900 | 08/05/13 | 01/27/14 | 175 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Norment, Robert | 925-827-2415 | 12/17/13 | 04/11/14 | 115 Alive, Prognosis Ext | Adult Failure To Thrive |
| Norona, Rodolfo | 925-689-7457 | 11/28/12 | 05/21/13 | 174 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Okumura, Takeshi | 925-937-7450 | 05/30/12 | 08/27/12 | 89 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Orozco, Herlindo | 925-228-2020 | 02/18/15 | 05/07/15 | 78 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Paganini, Maria | 925-228-8383 | 11/19/15 | 02/03/16 | 76 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Pitman, Sara | 925-932-9910 | 01/15/13 | 12/29/14 | 713 Alive, Prognosis Ext | End Stage Alzheimer's Disease |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 250 | | | | | |
| Rago, Donna | 925-939-2833 | 03/20/15 | 06/09/15 | 81 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Ricketts, Joyce | 925-937-7450 | 12/05/15 | 03/03/16 | 89 Alive, Prognosis Ext | Other Alzheimer's disease |
| Rico, Elsa | 925-825-1300 | 12/16/13 | 10/09/14 | 297 Alive, Prognosis Ext | Other Primary Cardiomyopathies, NOS |
| Rico, Elsa | 925-825-1300 | 02/18/15 | 08/06/15 | 169 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Rios, Pedro | 925-825-4280 | 04/29/13 | 07/16/13 | 78 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Robak, Bernice | 925-932-9910 | 02/27/15 | 09/23/15 | 208 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Rojas, Rosa | 925-933-7970 | 08/24/12 | 04/20/13 | 239 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Siple, Margaret | 925-687-4493 | 04/03/09 | 11/12/12 | 1319 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Siple, Margaret | 925-689-2266 | 12/21/13 | 08/06/14 | 228 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Thomas , Dorothy | 925-798-3900 | 07/09/12 | 01/04/13 | 179 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Thornton, Margaret | 925-377-7900 | 02/25/13 | 05/15/13 | 79 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Van Horn, Betty | 925-939-5820 | 11/06/13 | 06/30/14 | 236 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Wagner, Joyce | 925-939-2833 | 04/07/15 | 06/05/15 | 59 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Walton, Margaret | 925-937-7450 | 11/19/14 | 04/08/15 | 140 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Wang, Tseng | 925-933-7970 | 06/21/13 | 12/04/13 | 166 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Ways, Martha | 925-935-6630 | 06/24/13 | 09/19/13 | 87 Alive, Prognosis Ext | Renal Failure, Unspecified |
| Webb , Oliver | 925-935-6630 | 01/31/13 | 11/25/13 | 298 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| West Lafond, Lydia | 925-376-8900 | 01/21/13 | 06/12/13 | 142 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Whitney, Ralph | 925-254-6500 | 11/14/15 | 06/01/16 | 200 Alive, Prognosis Ext | Unspecified intestinal obstruction |
| Winkler , Mary | 925-975-5000 | 06/17/12 | 04/12/13 | 299 Alive, Prognosis Ext | Debility, Unspecified |
| Wisecarver, Marjorie | 925-825-3594 | 05/21/14 | 09/11/15 | 478 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Wolfkill , Louis | 925-933-7970 | 12/29/13 | 06/02/14 | 155 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Wolfkill, Louis | 925-933-7970 | 07/23/15 | 09/17/15 | 56 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Yates, Marie | 925-689-2266 | 03/28/12 | 05/20/13 | 418 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Team: 251 | | | | | |
| Abbott, Grover | 925-432-3831 | 09/07/11 | 11/01/12 | 421 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Arviso, Tommy | 925-757-4444 | 03/03/11 | 12/27/11 | 299 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Beck, John | 925-470-0767 | 11/24/14 | 04/14/15 | 141 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Black, Mary | 925-756-2858 | 03/10/15 | 09/01/15 | 175 Alive, Prognosis Ext | Acute Renal Failure, Unspecified |
| Burns, Pauline | 925-252-9448 | 07/24/12 | 06/30/15 | 1071 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Burrus, Bonnie | 925-516-8006 | 02/23/10 | 04/22/10 | 58 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Carroll, Robert | 925-628-2871 | 09/14/14 | 08/19/15 | 339 Alive, Prognosis Ext | Chronic Respiratory Failure |
| Castillo, Camilo | 925-228-2020 | 10/13/11 | 02/10/12 | 120 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Chavez, Mary | 925-757-8787 | 03/14/12 | 09/05/12 | 175 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Cho, Chong | 925-689-2266 | 08/08/15 | 05/25/16 | 291 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Cobern, Donna | 925-228-8383 | 07/28/09 | 08/20/10 | 388 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Cornejo, Abigail | 925-777-1529 | 11/24/09 | 02/21/10 | 89 Alive, Prognosis Ext | Malignant Neoplasm Of Bronchus And |
| Duffy, Eleanor | 925-689-2266 | 09/21/10 | 01/17/11 | 118 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Elliott-Wallin, Jean | 925-240-0733 | 04/18/15 | 07/15/15 | 88 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Everline, Vera | 925-439-5129 | 09/03/11 | 02/20/13 | 536 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Finn, Charles | 925-692-5838 | 02/23/13 | 03/21/14 | 391 Alive, Prognosis Ext | Debility, Unspecified |
| Foreman, Mabel | 925-825-4280 | 11/26/10 | 02/22/11 | 88 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Fry, Donald | 925-516-8006 | 08/23/12 | 06/17/13 | 298 Alive, Prognosis Ext | Debility, Unspecified |
| Gilmore, Patricia | 925-427-4444 | 02/28/12 | 07/10/13 | 498 Alive, Prognosis Ext | Debility, Unspecified |
| Glenn, Mary | 925-427-4444 | 04/20/09 | 02/12/10 | 298 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Gonzalez, Nellie | 925-458-1797 | 01/10/12 | 09/05/12 | 239 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Goodspeed , Herbert | 925-978-9021 | 08/11/11 | 08/01/12 | 356 Alive, Prognosis Ext | Debility, Unspecified |
| Gray, Cecil | 925-432-3831 | 05/20/10 | 08/31/12 | 834 Alive, Prognosis Ext | Senile Degeneration Brain |
| Hermansader, Thomas | 925-754-7772 | 03/14/10 | 06/10/10 | 88 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Hoellwarth, Daisy | 925-689-2266 | 05/13/09 | 05/05/10 | 357 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Jessen , Zona | 925-778-1268 | 03/17/12 | 12/05/12 | 263 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 251 | | | | | |
| Jones, Marita | 925-228-4260 | 05/24/10 | 08/13/10 | 81 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Keesler, Laura | 925-689-9222 | 02/12/10 | 08/09/10 | 178 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Kim, Chong | 510-414-9545 | 04/25/14 | 10/16/14 | 174 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Low, Dorothy | 925-287-8750 | 01/29/10 | 04/26/10 | 87 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Lucido, Sophie | 925-757-8787 | 10/29/14 | 09/16/15 | 322 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Magaw , Susan | 925-689-2266 | 08/14/15 | 02/03/16 | 173 Alive, Prognosis Ext | Multiple sclerosis |
| Malek, Amirbibi | 925-207-5865 | 05/21/15 | 11/11/15 | 174 Alive, Prognosis Ext | End stage renal disease |
| Marshall, Ruth | 925-513-4760 | 09/10/09 | 02/06/10 | 149 Alive, Prognosis Ext | Cerebral Embolism w/Cerebral Infarc |
| Marvin, Pauline | 925-778-6225 | 04/22/15 | 09/10/15 | 141 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Maslonkowski, Irene | 925-673-1237 | 09/02/13 | 09/14/15 | 742 Alive, Prognosis Ext | Cerebral atherosclerosis |
| McDaniel, Lillian | 925-513-0685 | 05/14/13 | 11/08/13 | 178 Alive, Prognosis Ext | Debility, Unspecified |
| Morodomi, Fusae | 925-890-5123 | 11/09/15 | 04/05/16 | 148 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Nasfell, Rita | 925-692-5838 | 08/01/12 | 04/08/14 | 615 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Parker, Kenneth | 925-689-2266 | 11/04/11 | 01/31/12 | 88 Alive, Prognosis Ext | Sarcoidosis |
| Parker, Kenneth | 925-689-2266 | 05/21/12 | 08/21/12 | 92 Alive, Prognosis Ext | Sarcoidosis |
| Paulin, Harry | 925-689-2266 | 04/26/10 | 11/22/10 | 210 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Perez, Lupe | 925-754-6059 | 07/13/13 | 06/30/15 | 717 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Pilgram, Norma | 925-849-5354 | 03/17/14 | 03/11/15 | 359 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Quartaroli, Wilfred | 925-240-2956 | 02/11/11 | 04/15/11 | 63 Alive, Prognosis Ext | Debility, Unspecified |
| Ramsey, Ida | 925-228-0517 | 11/10/10 | 09/02/11 | 296 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Reid, Rita | 925-939-2700 | 01/14/10 | 04/12/10 | 88 Alive, Prognosis Ext | Debility, Unspecified |
| Reilly, Karen | 925-287-8750 | 03/16/10 | 06/11/10 | 87 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Reynoso Anso , Angela | 925-427-7760 | 06/22/14 | 11/30/15 | 526 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Rubino, Linda | 925-212-3624 | 06/14/10 | 07/13/11 | 394 Alive, Prognosis Ext | Malignant Neoplasm of female genita |
| Rudzitis, Skaidrite | 925-676-3410 | 12/09/14 | 05/29/15 | 171 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Sare, Marian | 925-757-8787 | 08/29/09 | 01/13/10 | 137 Alive, Prognosis Ext | Debility, Unspecified |
| Silvan, Mary | 925-692-5838 | 10/25/10 | 02/01/11 | 99 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) . |
| Slosek, Theodore | 925-692-5838 | 12/20/13 | 10/14/14 | 298 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Spikes, Ida | 925-756-2858 | 02/05/13 | 07/26/13 | 171 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Tatum, Bertha | 925-691-5163 | 08/17/09 | 06/10/10 | 297 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Urbina , Maria | 925-754-3984 | 08/10/12 | 08/13/14 | 733 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Urbina, Maria | 925-754-0470 | 09/26/14 | 07/20/15 | 297 Alive, Prognosis Ext | End Stage Cardiovascular Disease,un |
| Vasquez, Rose | 925-754-7772 | 10/20/12 | 12/10/13 | 416 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Vaughan, Olva | 925-778-6225 | 07/13/09 | 01/07/10 | 178 Alive, Prognosis Ext | Debility, Unspecified |
| Walburg, Alan | 925-308-4505 | 09/02/14 | 11/10/14 | 69 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Ward, John | 925-435-5100 | 03/24/15 | 05/11/15 | 48 Alive, Prognosis Ext | Malignant Neoplasm of kidney, excep |
| Weinman, Cheryl | 925-351-6777 | 03/14/10 | 09/08/10 | 178 Alive, Prognosis Ext | Debility, Unspecified |
| White, Este | 925-439-1845 | 12/19/09 | 08/20/10 | 244 Alive, Prognosis Ext | Debility, Unspecified |
| Wilson, Don | 925-516-8006 | 08/08/09 | 03/29/10 | 233 Alive, Prognosis Ext | Senile Degeneration Brain |
| Wilson, Luule | 925-308-4505 | 09/24/13 | 03/30/15 | 552 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Windham, Gregory | 510-813-0583 | 06/13/10 | 11/22/10 | 162 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Wolden, Joel | 925-812-3744 | 07/01/15 | 09/23/15 | 84 Alive, Prognosis Ext | Malignant neoplasm of liver, not sp |
| Wynn, Fran | 925-689-3416 | 08/31/09 | 04/26/10 | 238 Alive, Prognosis Ext | Debility, Unspecified |
| Yanez , Anita | 925-432-3831 | 03/13/14 | 06/27/14 | 106 Alive, Prognosis Ext | Unspecified Viral Hepatitis wo ment |
| Yi, Tong | 925-240-6483 | 10/08/12 | 12/12/14 | 795 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Zinn, Eula | 925-676-3410 | 01/28/10 | 04/26/10 | 88 Alive, Prognosis Ext | Debility, Unspecified |
| Team: 252 | | | | | |
| Akbarinijad , Akbar | 925-933-7970 | 10/24/11 | 08/18/12 | 299 Alive, Prognosis Ext | Adult Failure To Thrive |
| Akins, Myra | 925-932-9910 | 10/15/11 | 04/11/12 | 179 Alive, Prognosis Ext | Arteriosclerotic Dementia w/Delirlu |
| Ament, Phyllis | 925-935-6630 | 10/13/10 | 06/08/11 | 238 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Arkley, Ruth | 925-935-1001 | 07/10/13 | 09/26/13 | 78 Alive, Prognosis Ext | End Stage Alzheimer's Disease |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 252 | | | | | |
| Bardsley, Norma | 925-932-3500 | 11/20/14 | 10/14/15 | 328 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Barrett, Diana | 925-258-9034 | 01/10/11 | 03/28/11 | 77 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Bates, Harold | 925-254-4120 | 09/02/10 | 11/29/10 | 88 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Berman, Lorraine | 925-831-1740 | 04/30/13 | 07/26/13 | 87 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Boer, Maria | 925-939-2700 | 03/04/13 | 08/28/13 | 177 Alive, Prognosis Ext | Subdural Hemorrhage |
| Bonawit, Irene | 925-939-5820 | 12/23/09 | 08/19/10 | 239 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Bookbinder, Bernice | 925-648-2800 | 09/12/11 | 10/14/11 | 32 Alive, Prognosis Ext | Adult Failure To Thrive |
| Boster , Thomas | 925-377-7900 | 12/11/15 | 03/10/16 | 90 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Brannan, Florene | 925-937-5348 | 11/17/11 | 05/14/12 | 179 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Breitweiser, James | 925-937-5348 | 10/04/12 | 03/08/13 | 155 Alive, Prognosis Ext | Lewy Body dementia |
| Burns, Elsie | 925-377-7900 | 06/05/14 | 01/28/15 | 237 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Capodieci, Alfonse | 925-377-7900 | 08/27/09 | 02/12/10 | 169 Alive, Prognosis Ext | Debility, Unspecified |
| Cherkassky, Maria | 925-933-7970 | 04/06/11 | 06/30/11 | 85 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Clemens, Winfred | 925-831-3964 | 05/25/12 | 08/22/12 | 89 Alive, Prognosis Ext | Adult Failure To Thrive |
| Coffin, Jean | 925-935-1001 | 11/27/14 | 03/24/15 | 117 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Collins, Mary | 925-831-3964 | 06/03/11 | 08/29/11 | 87 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Creson, Marie | 925-377-7900 | 06/20/09 | 07/26/10 | 401 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Dallara, Norina | 925-939-2833 | 03/19/10 | 02/25/11 | 343 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Damon, Catherine | 925-943-1121 | 07/20/13 | 03/10/15 | 598 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Damon, Catherine | 925-943-1121 | 09/21/15 | 03/15/16 | 176 Alive, Prognosis Ext | Alzheimer's disease with early onse |
| Delaplane, Marjorie | 925-377-7900 | 01/13/10 | 01/07/11 | 359 Alive, Prognosis Ext | Debility, Unspecified |
| Drapel, Gladys | 925-798-3900 | 02/04/10 | 12/15/10 | 314 Alive, Prognosis Ext | Senile Degeneration Brain |
| Evans, Jane | 925-377-7900 | 01/08/10 | 07/06/10 | 179 Alive, Prognosis Ext | Debility, Unspecified |
| Evans, Roger | 925-943-1121 | 05/03/15 | 10/19/15 | 169 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Evans, William | 925-207-8069 | 08/16/10 | 11/05/10 | 81 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Farnham, Calvin | 925-932-9910 | 04/13/10 | 03/04/11 | 325 Alive, Prognosis Ext | Debility, Unspecified |
| Fawcett, Sara | 925-377-7900 | 08/14/14 | 02/05/15 | 175 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Fleming, Patrick | 925-831-1740 | 04/04/14 | 06/30/14 | 87 Alive, Prognosis Ext | End Stage Chronic Renal Disease |
| Flint, Barbara | 925-939-2833 | 08/27/10 | 06/21/11 | 298 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Frost, Eleanor | 925-935-1001 | 12/12/13 | 01/28/15 | 412 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Glebus, Maria Korina | 925-933-7970 | 04/11/10 | 09/11/10 | 153 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Goto, Jean | 925-932-9910 | 06/05/11 | 05/04/12 | 334 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Gottlieb, Josephine "Rene" | 925-256-8708 | 05/12/09 | 08/13/10 | 458 Alive, Prognosis Ext | Debility, Unspecified |
| Griffeath, Bernice | 925-803-9100 | 12/27/12 | 06/24/13 | 179 Alive, Prognosis Ext | Debility, Unspecified |
| Haener, Lucille | 925-831-1740 | 08/07/12 | 05/26/14 | 657 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Heafey, John | 925-287-8750 | 09/17/12 | 06/10/13 | 266 Alive, Prognosis Ext | Adult Failure To Thrive |
| Hengel, Bertha | 925-831-1740 | 06/25/10 | 04/18/11 | 297 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Higgins, Marie | 925-287-8750 | 02/25/11 | 12/19/11 | 297 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Horgan , Ilene | 925-935-1001 | 09/28/12 | 09/25/13 | 362 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Horn, Regina Ann | 925-939-5820 | 01/14/10 | 09/08/10 | 237 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Hoselton, Helen | 925-287-8750 | 01/27/12 | 01/10/14 | 714 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Howard, Beatrice | 925-256-8708 | 10/13/11 | 04/09/12 | 179 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Humphreys, Georgiena | 925-254-8895 | 03/26/10 | 05/14/10 | 49 Alive, Prognosis Ext | Debility, Unspecified |
| Jelich, Edward | 925-943-1121 | 12/21/14 | 06/16/15 | 177 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Kechely, Rose | 925-943-1121 | 01/15/13 | 03/29/13 | 73 Alive, Prognosis Ext | Debility, Unspecified |
| Kenyon, Jean | 925-932-6460 | 04/27/10 | 12/22/10 | 239 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Keys , Eloise | 925-937-5348 | 04/14/16 | 06/07/16 | 54 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Keys, Eloise | 925-937-5348 | 06/21/12 | 09/17/12 | 88 Alive, Prognosis Ext | Adult Failure To Thrive |
| Keys, Eloise | 925-937-5348 | 01/23/14 | 04/17/15 | 449 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Kilmartin, Frances | 925-831-1740 | 02/27/14 | 05/12/16 | 805 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Kingery, James | 925-254-6500 | 08/28/10 | 10/07/10 | 40 Alive, Prognosis Ext | Debility, Unspecified |
| Korn, Anita | 925-838-3020 | 11/11/15 | 04/19/16 | 160 Alive, Prognosis Ext | Alzheimer's disease, unspecified |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 252 | | | | | |
| Kossen, Jeanette | 925-648-2800 | 02/21/14 | 02/11/15 | 355 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Kuo, Hsiao | 925-943-1121 | 11/17/15 | 07/12/16 | 238 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Lagler , Maria | 925-831-1740 | 10/30/13 | 04/16/14 | 168 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Lalolo, Nelvi | 925-935-1001 | 09/12/13 | 07/03/14 | 294 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Langosch, Alfred | 925-287-8750 | 05/29/12 | 09/12/14 | 836 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Leavy, Hilda | 925-287-8750 | 02/15/14 | 10/12/14 | 239 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Lewis, Deborah | 925-935-1660 | 03/01/11 | 05/26/11 | 86 Alive, Prognosis Ext | Adult Failure To Thrive |
| Long , Virginia | 925-287-8750 | 04/27/15 | 04/18/16 | 357 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Lopker, Betty Jean | 925-939-2833 | 01/25/11 | 09/21/11 | 239 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Maher, Ruth | 925-932-9910 | 06/14/11 | 09/19/11 | 97 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Mann, Lillian | 925-361-8781 | 05/20/11 | 01/13/12 | 238 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Marllave, Doris | 925-932-3802 | 06/30/10 | 09/14/10 | 76 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Marroquin, Leonor | 925-435-9963 | 06/12/10 | 09/07/10 | 87 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Martell, Sharon | 925-932-3500 | 01/15/15 | 04/10/15 | 85 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Martin , Barbara | 925-935-1001 | 01/23/12 | 07/12/12 | 171 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| McDonough, Lorraine | 925-932-3500 | 01/09/14 | 12/04/14 | 329 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Mendell, Alma | 925-256-8708 | 09/14/10 | 07/08/11 | 297 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Miles, Alice | 925-945-1152 | 03/26/09 | 01/19/10 | 299 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Miles, Alice | 925-945-1152 | 07/29/10 | 01/24/11 | 179 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Misserlan, Vada | 925-831-3964 | 10/28/14 | 12/21/15 | 419 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Morbidelli, Corrine | 925-943-1121 | 02/10/13 | 05/30/13 | 109 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Morrell, Barbara | 925-933-7970 | 02/18/11 | 10/14/11 | 238 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Morrell, Barbara | 925-933-7970 | 12/20/11 | 06/15/12 | 178 Alive, Prognosis Ext | Debility, Unspecified |
| Mousseau, Elizabeth | 925-932-3500 | 10/14/10 | 08/09/11 | 299 Alive, Prognosis Ext | Amyotrophic Lateral Sclerosis (ALS) |
| Muhr, Ruth | 925-687-5038 | 05/26/09 | 11/03/10 | 526 Alive, Prognosis Ext | Senile Degeneration Brain |
| Munson, Mary | 925-820-9801 | 11/06/15 | 01/20/16 | 75 Alive, Prognosis Ext | Unspecified severe protein-calorie |
| Musser, Barbara | 925-256-8708 | 11/10/09 | 11/01/10 | 356 Alive, Prognosis Ext | Debility, Unspecified |
| Mussog, Roy | 925-287-8750 | 07/21/10 | 01/14/11 | 177 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Mussog, Roy | 925-287-8750 | 04/25/11 | 10/20/11 | 178 Alive, Prognosis Ext | Adult Failure To Thrive |
| Mussog, Roy | 925-287-8750 | 03/18/12 | 05/15/12 | 58 Alive, Prognosis Ext | Debility, Unspecified |
| Neef, Walter | 925-943-1121 | 04/02/14 | 03/25/15 | 357 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Northon, Marcia | 925-831-1740 | 10/03/11 | 12/29/11 | 87 Alive, Prognosis Ext | Debility, Unspecified |
| O'Brien, Virginia | 925-943-1121 | 03/13/12 | 09/05/12 | 176 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| O'Farrell, Jesse | 925-943-1121 | 03/22/11 | 08/12/12 | 509 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Olsen, Elizabeth | 925-287-8750 | 11/11/15 | 05/06/16 | 177 Alive, Prognosis Ext | Heart disease, unspecified |
| Orsi, Barbara | 925-838-3020 | 07/03/10 | 12/29/10 | 179 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Orsi, Barbara | 925-838-3020 | 06/08/11 | 12/05/11 | 180 Alive, Prognosis Ext | Debility, Unspecified |
| Penson, Iona | 925-932-9910 | 01/12/10 | 08/05/10 | 205 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Pigman, Gaston | 925-939-2833 | 03/20/09 | 01/13/10 | 299 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Rapini, Frances | 925-831-1740 | 11/15/10 | 02/11/11 | 88 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Ratto, Mildred | 925-935-1660 | 02/11/11 | 06/04/12 | 479 Alive, Prognosis Ext | Debility, Unspecified |
| Reid, Rose | 925-933-2636 | 07/31/09 | 01/26/10 | 179 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Richter, Robert | 925-256-8708 | 11/17/10 | 05/13/11 | 177 Alive, Prognosis Ext | Arteriosclerotic Dementia w/Depress |
| Ridenour, William | 925-935-1001 | 07/13/14 | 02/25/15 | 227 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Ridenour, William | 925-935-1001 | 04/02/15 | 07/30/15 | 119 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Root, Pauline | 925-803-9102 | 01/22/15 | 05/10/16 | 474 Alive, Prognosis Ext | Chronic obstructive pulmonary disea |
| Roper, Linda | 925-798-3900 | 06/16/10 | 04/11/11 | 299 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Saincome, Michael | 925-256-8708 | 05/18/12 | 10/01/12 | 136 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Schaer, Leonard | 925-943-1121 | 09/23/14 | 03/20/15 | 178 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Schechter, Lilyan | 925-648-2800 | 11/03/11 | 12/20/13 | 778 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Schnayer, Irving | 925-377-7900 | 04/20/15 | 06/07/16 | 414 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Schulz, Oliver | 925-944-3304 | 09/23/09 | 02/17/10 | 147 Alive, Prognosis Ext | Heart Disease, Unspecified |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 252 | | | | | |
| Schwin, Joseph | 925-280-9975 | 05/05/14 | 10/31/14 | 179 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Shearer, Mary | 925-935-1001 | 01/23/16 | 07/12/16 | 171 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Shewmaker, Leroy | 925-855-0400 | 04/07/09 | 01/31/10 | 299 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Shumway, Marguerite | 925-935-3085 | 06/27/10 | 12/22/10 | 178 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Silva, Lowell | 925-287-8750 | 09/25/13 | 03/16/15 | 537 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Silva, Lowell | 925-287-8750 | 04/23/15 | 12/16/15 | 237 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Smith, Jean | 925-377-7900 | 04/22/15 | 04/12/16 | 356 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Springob, Thomas | 925-831-1740 | 03/22/11 | 06/17/11 | 87 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Stone, Olga | 925-935-1660 | 12/20/10 | 02/16/11 | 58 Alive, Prognosis Ext | Malignant Neoplasm of the Bladder, |
| Stroin, James | 925-287-8750 | 08/22/14 | 10/14/15 | 418 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Tom, Lily | 925-838-3020 | 04/03/15 | 01/20/16 | 292 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Towers, William | 925-377-7900 | 06/15/11 | 09/12/11 | 89 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Troxa, Carlos | 925-838-3020 | 10/01/13 | 12/23/13 | 83 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Valner , Regina | 925-284-1420 | 07/09/13 | 12/11/13 | 155 Alive, Prognosis Ext | Malignant Neoplasm Primary Brain, u |
| Van Skike, Beverly | 925-377-7900 | 11/23/09 | 11/17/10 | 359 Alive, Prognosis Ext | Senile Dementia w/Delirium |
| Van Skike, Beverly | 925-377-7900 | 01/27/11 | 03/25/11 | 57 Alive, Prognosis Ext | Senile Dementia w/Delirium |
| Vasankari, Elli | 925-256-8708 | 10/01/13 | 11/21/14 | 416 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Verhoek, Barbara | 925-937-5348 | 12/01/11 | 03/29/12 | 119 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Wallis, E Gerriden | 925-831-1740 | 08/03/11 | 01/30/12 | 180 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Wang, SzeSun | 925-979-5739 | 07/23/09 | 01/07/10 | 168 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Warner, Jack | 925-376-5995 | 03/19/10 | 12/28/10 | 284 Alive, Prognosis Ext | Debility, Unspecified |
| Washington, Jane | 925-287-8750 | 12/21/15 | 03/15/16 | 85 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| West Lafond, Lydia | 925-376-8900 | 08/15/14 | 02/09/15 | 178 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Woehleke, Ruth | 925-287-8750 | 07/20/10 | 01/09/12 | 538 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Wood , Phyllis | 925-935-1001 | 12/10/15 | 08/03/16 | 237 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Woods, Barbara | 925-939-2833 | 02/19/11 | 07/18/11 | 149 Alive, Prognosis Ext | Senile Dementia w/Depressive |
| Yasuda, Takashi | 925-287-8750 | 04/20/15 | 03/23/16 | 338 Alive, Prognosis Ext | Neoplasm of unspecified behavior of |
| Young, Margaret | 925-943-1121 | 01/14/15 | 07/10/15 | 177 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Young, Margaret | 925-943-1121 | 08/18/15 | 04/05/16 | 231 Alive, Prognosis Ext | Heart disease, unspecified |
| Zoricic, Ivana | 925-284-1420 | 01/09/09 | 05/02/10 | 478 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Team: 253 | | | | | |
| Adams, Stella | 925-822-3442 | 08/02/12 | 07/08/13 | 340 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Alexander, Lillian | 925-825-4280 | 01/05/10 | 03/31/10 | 85 Alive, Prognosis Ext | Debility, Unspecified |
| Alfano , George | 925-240-0733 | 01/19/16 | 05/16/16 | 118 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Allen, Shirley | 925-228-8383 | 08/30/13 | 11/21/13 | 83 Alive, Prognosis Ext | Renal Failure, Unspecified |
| Anderson, Charles | 510-222-1882 | 03/10/10 | 05/28/10 | 79 Alive, Prognosis Ext | Malignant Neoplasm of the Bladder, |
| Armstrong, Benjamin | 510-845-5994 | 02/15/11 | 02/09/12 | 359 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Armstrong, George | 510-665-2800 | 04/22/11 | 04/15/12 | 359 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Arnst, Adora | 925-778-6225 | 12/19/15 | 03/14/16 | 86 Alive, Prognosis Ext | Other cerebrovascular disease |
| Avalos Huerta, Jacqueline | 925-278-9560 | 07/20/16 | 08/22/16 | 33 Alive, Prognosis Ext | Anoxic brain damage, not elsewhere |
| Azeka, Masami | 510-323-5873 | 11/14/11 | 07/09/12 | 238 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Bargy, Margherita | 925-754-7772 | 12/22/14 | 12/15/15 | 358 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Bargy, Margherita | 925-754-7772 | 02/11/16 | 06/13/16 | 123 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Bayless, Victoria | 510-418-8505 | 06/17/11 | 08/05/11 | 49 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Bertoli, Celestine | 925-513-4573 | 02/17/16 | 05/04/16 | 77 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Biddings, Mallie | 510-758-9600 | 01/09/11 | 09/02/11 | 236 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Brown, Frances | 510-558-7352 | 09/04/11 | 02/14/12 | 163 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Brue, Viola | 510-222-5174 | 07/14/10 | 05/03/11 | 293 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Burger, Elizabeth | 925-516-8006 | 06/04/14 | 01/11/16 | 586 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Clevenger, Julie | 925-679-7438 | 03/03/14 | 06/10/16 | 830 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Coe, Allen | 510-237-5769 | 06/28/11 | 10/24/11 | 118 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| **Team: 253** | | | | | |
| Coleman, Bertha | 510-837-1301 | 05/25/10 | 09/13/11 | 476 Alive, Prognosis Ext | Debility, Unspecified |
| Collier, Leona | 925-350-3943 | 01/15/16 | 04/11/16 | 87 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Cox, Audrey | 925-228-8383 | 07/26/11 | 05/16/12 | 295 Alive, Prognosis Ext | Senile Dementia w/Delirium |
| Daniel, Cynthia | 925-798-5660 | 09/06/12 | 07/30/13 | 327 Alive, Prognosis Ext | Debility, Unspecified |
| Davies, Richard | 925-937-5348 | 02/25/10 | 03/26/10 | 29 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Diamond , Miriam | 510-558-7352 | 12/16/11 | 08/10/12 | 238 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Elizondo, David | 925-303-4291 | 09/26/15 | 12/22/15 | 87 Alive, Prognosis Ext | Alzheimer's disease with early onse |
| Ensminger, Barbara | 925-935-1001 | 04/21/09 | 02/15/10 | 300 Alive, Prognosis Ext | Senile Dementia w/Depressive |
| Fadelli, Ruth | 925-798-3900 | 06/24/09 | 03/16/10 | 265 Alive, Prognosis Ext | Debility, Unspecified |
| Foerster, Bertha | 925-240-0733 | 01/31/16 | 04/25/16 | 85 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Fong, Florence | 510-232-3689 | 03/21/11 | 09/13/11 | 176 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Guillen Fausto, Yaretzi | 925-329-8252 | 02/22/15 | 01/25/16 | 337 Alive, Prognosis Ext | Anencephaly |
| Haas, Lise | 510-848-5112 | 03/10/06 | 04/28/10 | 1510 Alive, Prognosis Ext | Debility, Unspecified |
| Halstead, Roslyn | 925-754-7772 | 08/17/15 | 06/07/16 | 295 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Harbaugh, Jean | 925-287-8750 | 06/24/09 | 02/18/10 | 239 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Harriman, Sandra | 925-228-2020 | 12/12/13 | 03/07/14 | 85 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Hill, Edna | 510-215-1400 | 08/29/10 | 11/24/10 | 87 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Hill, Phillip | 510-758-1800 | 02/16/12 | 08/10/12 | 176 Alive, Prognosis Ext | Adult Failure To Thrive |
| Howard, V Charle | 510-758-1122 | 03/23/11 | 09/12/11 | 173 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Iten, Josef | 925-939-8190 | 09/14/09 | 03/05/10 | 172 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Iwahashi, Chizu | 510-558-8561 | 04/01/11 | 11/21/11 | 234 Alive, Prognosis Ext | Other malignant lymphomas, unspec s |
| Jackson, Alyene | 925-777-1904 | 04/04/13 | 05/12/16 | 1134 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Kading , Lavina | 925-349-6769 | 02/01/13 | 01/10/14 | 343 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Kaldor, Jean | 925-685-2257 | 09/08/12 | 02/14/14 | 524 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Leon, Sherry | 510-758-9600 | 12/11/09 | 05/03/11 | 508 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Osterman, Mildred | 510-758-1122 | 10/12/11 | 02/08/12 | 119 Alive, Prognosis Ext | Debility, Unspecified |
| Ota, Susumu | 510-245-1713 | 05/10/10 | 04/28/11 | 353 Alive, Prognosis Ext | Debility, Unspecified |
| Perez, Lupe | 925-732-7418 | 09/27/15 | 07/19/16 | 296 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Ramsey, Ida | 925-228-0517 | 09/19/12 | 01/13/14 | 481 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Reed , Jimmy | 510-235-3720 | 05/03/12 | 04/02/13 | 334 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Rossi, Florence | 510-233-5377 | 11/04/09 | 10/26/10 | 356 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Rossi, Florence | 510-236-0574 | 01/07/11 | 06/30/11 | 174 Alive, Prognosis Ext | Debility, Unspecified |
| Samuels, Jennie | 925-516-8006 | 08/11/15 | 04/07/16 | 240 Alive, Prognosis Ext | Nontraumatic subdural hemorrhage, u |
| Seltzer, Amy | 510-841-4844 | 06/10/09 | 03/30/11 | 658 Alive, Prognosis Ext | Senile Degeneration Brain |
| Sutherland, Catherine | 510-233-9693 | 09/29/09 | 03/17/11 | 534 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Takahashi, Kiyo | 510-558-7352 | 02/05/10 | 11/30/10 | 298 Alive, Prognosis Ext | Debility, Unspecified |
| Tassell, Harry | 925-754-7772 | 05/19/14 | 11/10/15 | 540 Alive, Prognosis Ext | Heart failure, unspecified |
| Tracht, Allen | 510-526-4652 | 07/12/10 | 03/18/11 | 249 Alive, Prognosis Ext | Malignant Neoplasm Of Bronchus And |
| Trottier, Gail | 925-949-6434 | 02/05/16 | 04/28/16 | 83 Alive, Prognosis Ext | Alcoholic liver disease, unspecifie |
| Waggoner, Ella | 510-235-5514 | 02/05/13 | 07/30/13 | 175 Alive, Prognosis Ext | Adult Failure To Thrive |
| Whalin, Geraldine | 510-758-1122 | 02/20/12 | 08/15/12 | 177 Alive, Prognosis Ext | Debility, Unspecified |
| Williams, Wilhelmina | 925-228-8383 | 03/07/11 | 06/27/12 | 478 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Wujcik, Minnie | 925-689-7457 | 05/25/08 | 01/14/10 | 599 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| **Team: 254** | | | | | |
| Adams, Cora | 510-530-3475 | 09/17/11 | 09/07/12 | 356 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Aholelei, Katoveve | 650-921-7813 | 11/29/11 | 02/10/14 | 804 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Akin, Wanda | 510-523-8857 | 07/07/11 | 03/01/12 | 238 Alive, Prognosis Ext | Debility, Unspecified |
| Andersen, Carmella | 510-654-7172 | 09/24/13 | 12/04/13 | 71 Alive, Prognosis Ext | Debility, Unspecified |
| Arviso, Tommy | 510-883-4266 | 01/27/13 | 08/23/13 | 208 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Bandel, Erma | 510-531-7190 | 09/24/10 | 07/20/12 | 665 Alive, Prognosis Ext | Debility, Unspecified |
| Barlow, Madeline | 510-522-1084 | 09/26/10 | 05/23/11 | 239 Alive, Prognosis Ext | Debility, Unspecified |

'rogram: 91

Team: 254

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| Bell, Bernice | 510-658-9266 | 12/15/09 | 08/10/10 | 238 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Bellevue, Mollie | 510-635-3469 | 07/09/10 | 09/01/11 | 419 Alive, Prognosis Ext | Debility, Unspecified |
| Benjamin, Slyvia | 510-658-9266 | 05/21/14 | 09/10/14 | 112 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Boele, Pieter | 510-522-1084 | 09/17/12 | 05/14/13 | 239 Alive, Prognosis Ext | Malignant Neoplasm of the Large Int |
| Bottino, Irene | 510-522-1084 | 12/07/13 | 05/28/14 | 172 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Cage , Mary | 510-232-5945 | 10/15/15 | 08/09/16 | 299 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Caso, Rose | 510-534-8540 | 08/11/14 | 11/05/14 | 86 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Catolos , Loreta | 510-533-9537 | 08/12/11 | 02/12/13 | 550 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Chatman, June | 510-235-5514 | 02/03/14 | 06/09/15 | 491 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Clarke, Margarette | 510-434-2841 | 01/20/12 | 04/18/12 | 89 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Claussen, Gertrude | 510-522-1084 | 11/12/09 | 01/05/11 | 419 Alive, Prognosis Ext | Malignant Neoplasm Of Bronchus And |
| Coe, Allen | 510-841-4844 | 03/16/10 | 09/10/10 | 178 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Cole, Annie | 510-233-1474 | 05/28/15 | 03/22/16 | 299 Alive, Prognosis Ext | Malignant neoplasm of uterus, part |
| Collins, Anna | 510-531-7190 | 12/18/13 | 09/24/14 | 280 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Collins, Mary | 510-237-5182 | 10/29/15 | 08/22/16 | 298 Alive, Prognosis Ext | Cerebrovascular disease, unspecifie |
| Dolgoff, Estelle | 510-444-4684 | 08/09/12 | 12/06/12 | 119 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Dougherty, Hugh | 510-232-4523 | 07/27/16 | 08/22/16 | 26 Alive, Prognosis Ext | Hepatic failure, unspecified withou |
| Drake, Jean | 510-748-4300 | 04/06/10 | 06/18/10 | 73 Alive, Prognosis Ext | Debility, Unspecified |
| Edgar, Donald | 510-531-7396 | 04/29/12 | 12/24/12 | 239 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Elias, Juvenal | 510-536-6512 | 08/26/09 | 02/16/10 | 174 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Fernandez, Adis | 510-717-1411 | 07/11/12 | 10/05/12 | 86 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Fluno, Marcella | 510-531-7190 | 04/30/13 | 02/19/14 | 295 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Flynn, Margaret | 510-612-8966 | 02/05/15 | 05/25/16 | 475 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Foster, Cleo | 510-799-5572 | 01/30/14 | 01/24/15 | 359 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Fountain, Marjorie | 510-522-1084 | 09/08/10 | 06/29/11 | 294 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Galloway, Marjorie | 510-522-1084 | 03/06/13 | 02/26/14 | 357 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| George, Bryan | 510-233-8513 | 02/21/15 | 05/20/15 | 88 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Gill, Patricia | 510-594-8800 | 01/30/14 | 06/08/16 | 860 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Gough, Lydia | 510-444-6019 | 11/21/09 | 05/18/10 | 178 Alive, Prognosis Ext | Debility, Unspecified |
| Greenberg, Aaron | 510-531-7190 | 01/26/12 | 10/05/12 | 253 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Griffin, Dorothy | 510-525-3212 | 09/04/14 | 06/08/16 | 643 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Grimstvedt, Clarice | 510-521-9200 | 06/04/11 | 03/29/12 | 299 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Grimstvedt, Clarice | 510-521-9200 | 10/29/12 | 07/17/13 | 261 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Hall , Faith | 510-428-1166 | 09/06/12 | 12/04/12 | 89 Alive, Prognosis Ext | Debility, Unspecified |
| Hardy, Rose | 650-333-9767 | 07/29/15 | 03/09/16 | 224 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Harper, Margaree | 510-521-5765 | 11/14/14 | 07/03/15 | 231 Alive, Prognosis Ext | Peripheral Vascular Disease, Unspec |
| Harvey, Evelyn | 510-836-3777 | 11/03/10 | 02/24/12 | 478 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Haye, Sylvia | 510-387-8115 | 04/22/10 | 10/13/10 | 174 Alive, Prognosis Ext | Debility, Unspecified |
| Heckman, Kathleen | 510-456-5882 | 03/19/16 | 06/08/16 | 81 Alive, Prognosis Ext | Heart disease, unspecified |
| Henderson , Adell | 510-261-5613 | 03/02/12 | 10/17/12 | 229 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Higbie, Jane | 510-531-7190 | 08/21/10 | 06/14/12 | 663 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Hill , Lisa | 510-232-5945 | 10/07/15 | 03/30/16 | 175 Alive, Prognosis Ext | Systemic sclerosis, unspecified |
| Hum, May | 510-632-7782 | 03/11/12 | 06/27/13 | 473 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Knight, Glenda | 510-640-2752 | 07/27/15 | 11/06/15 | 102 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Krauland, Maria | 510-521-9200 | 05/15/12 | 10/17/12 | 155 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Ledward, Richard | 510-533-2381 | 04/11/12 | 12/21/12 | 254 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Lee, Max | 510-665-2800 | 03/21/13 | 06/18/13 | 89 Alive, Prognosis Ext | Infantile Cerebral Palsy |
| Leighton, Alice | 510-444-4684 | 06/12/13 | 08/14/13 | 63 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| London, Reuben | 510-444-4684 | 12/04/11 | 03/01/12 | 88 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| London, Sarah | 510-649-6670 | 04/14/12 | 09/12/13 | 516 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Lucas, Katie | 510-836-3777 | 09/28/12 | 12/14/12 | 77 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Lydon, Nellie | 510-534-8540 | 10/20/13 | 06/11/14 | 234 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| Team: 254 | | | | | |
| McGhee, Harold | 510-444-4684 | 01/14/10 | 09/22/10 | 251 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| McGuire , Anne | 510-339-1442 | 01/16/13 | 07/15/13 | 180 Alive, Prognosis Ext | Debility, Unspecified |
| Montes, Ruby | 510-233-8513 | 06/19/15 | 02/10/16 | 236 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Mulligan, Bertram | 510-534-8540 | 03/08/13 | 05/29/13 | 82 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Nakano, Haru | 510-748-4300 | 06/27/12 | 12/21/12 | 177 Alive, Prognosis Ext | Debility, Unspecified |
| Nakano, Haru | 510-748-4300 | 12/26/12 | 02/21/13 | 57 Alive, Prognosis Ext | Debility, Unspecified |
| Ohashi, Kazuye | 510-531-7190 | 06/27/11 | 02/21/12 | 239 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Ordway, Dorice | 510-547-4676 | 10/12/10 | 08/08/11 | 300 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Peoples, Mattie | 510-562-4969 | 04/19/09 | 02/08/10 | 295 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Peoples, Mattie | 510-638-9519 | 08/17/11 | 12/14/11 | 119 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Peoples, Mattie | 510-638-9519 | 03/20/12 | 07/16/12 | 118 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Perry, Viola | 510-451-3856 | 09/24/10 | 12/20/10 | 87 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Pieper, Marguerite | 510-523-8857 | 03/13/13 | 09/03/14 | 539 Alive, Prognosis Ext | Lewy Body dementia |
| Pimentel, Arturo | 510-536-4134 | 11/03/10 | 03/15/11 | 132 Alive, Prognosis Ext | Presenile Dementia, uncomplicated |
| Pitto, Ida | 510-337-1033 | 06/15/10 | 12/08/10 | 176 Alive, Prognosis Ext | Debility, Unspecified |
| Pitts, Dorothy | 510-569-5889 | 01/03/12 | 06/28/12 | 177 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Plecha, Helen | 510-654-7973 | 11/23/11 | 09/17/12 | 299 Alive, Prognosis Ext | Arteriosclerotic Dementia w/Depress |
| Poirier, Otto | 510-301-1296 | 02/22/12 | 01/04/13 | 317 Alive, Prognosis Ext | Malignant Neoplasm Of Bronchus And |
| Poon, Chung | 510-261-8564 | 08/15/11 | 03/05/12 | 203 Alive, Prognosis Ext | Lewy Body dementia |
| Rehr, Estelle | 510-531-7190 | 11/18/10 | 05/16/11 | 179 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Ronnow, Annie | 510-534-3637 | 06/04/10 | 11/24/10 | 173 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Rothenberg, S.Claire | 510-444-4684 | 11/27/12 | 04/15/13 | 139 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Sah, Margaret | 510-835-5511 | 03/21/12 | 06/18/12 | 89 Alive, Prognosis Ext | Malignant Neoplasm of the Large Int |
| Salinas, Dorothy | 510-522-1084 | 04/12/11 | 08/04/11 | 114 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Salzman, Nancy | 510-531-7190 | 06/10/11 | 09/07/11 | 89 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Schneider, Annie | 510-235-3720 | 05/12/14 | 02/26/16 | 655 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Singleton, Alcaper | 510-849-1241 | 02/16/10 | 10/11/10 | 237 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Sivertson, Severin | 510-594-8800 | 12/28/11 | 08/23/12 | 239 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Soo, Leon | 510-658-9266 | 04/24/10 | 06/17/11 | 419 Alive, Prognosis Ext | Malignant Neoplasm of the Rectum |
| Strandt, Mary | 510-654-7172 | 05/01/12 | 07/27/12 | 87 Alive, Prognosis Ext | Debility, Unspecified |
| Tajiri, Yoshiko | 510-841-4844 | 03/26/14 | 05/23/16 | 789 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Terusaki, Lily | 510-654-7172 | 04/30/13 | 10/04/13 | 157 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Thomas , Rosemary | 510-848-1776 | 07/21/12 | 10/18/13 | 454 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Tichenor, Austin | 510-444-4684 | 01/10/13 | 02/13/13 | 34 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Venezia , Evelyn | 510-569-3261 | 12/25/12 | 03/22/13 | 87 Alive, Prognosis Ext | Debility, Unspecified |
| Vree, Dale | 510-841-4844 | 02/07/15 | 05/06/15 | 88 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Waggoner, Philip | 925-978-6620 | 12/21/12 | 05/13/15 | 873 Alive, Prognosis Ext | Alcoholic Cirrhosis of Liver |
| Wallace, Helen | 510-849-9042 | 11/20/12 | 09/04/13 | 288 Alive, Prognosis Ext | Adult Failure To Thrive |
| Ward, Dennis | 510-536-6512 | 07/07/09 | 04/30/10 | 297 Alive, Prognosis Ext | Debility, Unspecified |
| Williams, Effie | 510-665-2800 | 04/21/09 | 02/08/10 | 293 Alive, Prognosis Ext | Debility, Unspecified |
| Willson, Donald | 510-223-3355 | 04/07/14 | 01/25/16 | 658 Alive, Prognosis Ext | (Idiopathic) normal pressure hydroc |
| Winzer, Loise | 510-232-5945 | 02/05/16 | 08/17/16 | 194 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Yanez, Maria | 510-522-1084 | 10/05/12 | 01/02/13 | 89 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Team: 255 | | | | | |
| Agnew , Virginia | 925-930-8119 | 09/11/13 | 07/07/14 | 299 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Arnett, William | 925-825-6246 | 12/23/12 | 06/14/13 | 173 Alive, Prognosis Ext | Lymphoma,Unspec site, Extranodal& S |
| Arnold , Dena | 925-944-5237 | 01/25/12 | 01/17/13 | 358 Alive, Prognosis Ext | Debility, Unspecified |
| Autrey, Jean | 925-938-0200 | 12/05/15 | 02/29/16 | 86 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Barajas, Juan | 925-383-9960 | 03/25/11 | 07/26/11 | 123 Alive, Prognosis Ext | Debility, Unspecified |
| Barajas, Soledad | 925-687-3386 | 05/12/13 | 03/05/14 | 297 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Beckus, Margaret | 925-838-2831 | 11/07/11 | 04/26/13 | 536 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| **Team: 255** | | | | | |
| Binder, Jean | 707-703-4457 | 02/22/16 | 05/09/16 | 77 Alive, Prognosis Ext | Alzheimer's disease with late onset |
| Boyle, Rose | 925-787-3736 | 11/29/12 | 07/23/13 | 236 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Brooks, Joel | 925-938-0200 | 11/10/14 | 09/03/15 | 297 Alive, Prognosis Ext | Parkinson's Disease, paralysis agit |
| Brown, Françoise | 925-376-5995 | 04/15/14 | 06/08/15 | 419 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Burns, Thelma | 925-937-8071 | 10/14/11 | 01/09/12 | 87 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Caceres, Julio | 925-682-1207 | 02/24/16 | 03/28/16 | 33 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Chesnut, Joyce | 925-984-8184 | 12/09/11 | 01/30/13 | 418 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Chin, Jennie | 925-849-4413 | 03/24/12 | 01/16/13 | 298 Alive, Prognosis Ext | Debility, Unspecified |
| Choy, Gary | 650-814-9920 | 02/22/14 | 08/19/14 | 178 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Cleve, Garey | 916-412-9327 | 09/28/13 | 02/25/14 | 150 Alive, Prognosis Ext | Malignant Neoplasm of Prostate (Exc |
| Cohen, Barney | 925-932-7812 | 12/12/13 | 06/09/14 | 179 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Collins, Grant | 925-938-0200 | 08/13/15 | 01/27/16 | 167 Alive, Prognosis Ext | Amyotrophic lateral sclerosis |
| Darmogray, Steve | 925-838-6888 | 03/20/16 | 05/05/16 | 46 Alive, Prognosis Ext | Unspecified combined systolic (cong |
| Davenport, Vera | 925-284-5201 | 10/09/10 | 09/01/11 | 327 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| De Garmo, John | 925-595-6560 | 04/19/11 | 10/12/11 | 176 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Edelen, Marian | 925-945-6632 | 05/05/14 | 04/29/15 | 359 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Ellis, Helen | 925-979-1200 | 07/20/12 | 01/14/13 | 178 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Fawcett, Sara | 925-357-8061 | 03/12/15 | 12/31/15 | 294 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Feng, Qicheng | 510-552-4052 | 06/11/14 | 01/23/15 | 226 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Gertsch , Phoebe | 925-682-1819 | 02/15/16 | 04/13/16 | 58 Alive, Prognosis Ext | Chronic respiratory failure, unspec |
| Giboney, Dorothy | 925-685-4345 | 07/18/12 | 07/10/13 | 357 Alive, Prognosis Ext | Debility, Unspecified |
| Gill, Bernice | 925-828-8838 | 02/01/12 | 09/26/12 | 238 Alive, Prognosis Ext | Debility, Unspecified |
| Gleeson, Jacquelinea | 925-210-0808 | 01/30/15 | 07/28/15 | 179 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Guimon, Barbara | 925-954-7242 | 10/25/12 | 04/19/13 | 176 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Henne , Lida | 925-284-1836 | 02/07/13 | 08/02/13 | 176 Alive, Prognosis Ext | Malignant Neoplasm of the Ovary |
| Knopp, Helen | 925-376-7201 | 08/07/12 | 05/31/13 | 297 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Lord , Virginia | 925-945-7398 | 03/30/13 | 09/24/13 | 178 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Lovio, Rose | 925-838-2156 | 05/02/13 | 07/29/13 | 88 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Lubbock, Florence | 925-937-8884 | 05/28/12 | 01/21/13 | 238 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Lundstrom, Geraldine | 925-284-5201 | 03/07/13 | 10/22/15 | 959 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Malstrom, Lorraine | 925-933-2344 | 03/26/14 | 05/19/15 | 419 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Mikic, Graciela | 925-687-7394 | 04/03/15 | 01/26/16 | 298 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Miller, Ann | 925-287-8994 | 08/26/10 | 11/22/10 | 88 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Miller, Dorothy | 925-938-0200 | 10/12/10 | 04/08/11 | 178 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Norleen, Herbert | 925-376-3291 | 10/18/14 | 01/15/15 | 89 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Novik, Lillian | 925-256-9159 | 03/27/10 | 11/19/10 | 237 Alive, Prognosis Ext | Debility, Unspecified |
| Odam, Tommy | 925-949-8959 | 05/03/11 | 12/26/11 | 237 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Osteen, Charlene | 707-386-5789 | 09/10/12 | 12/07/12 | 88 Alive, Prognosis Ext | Malignant Neoplasm of the Bladder, |
| Petry, Ruth | 925-938-4089 | 03/17/13 | 06/12/13 | 87 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Piotrowicz, Dorothy | 925-934-8827 | 08/11/13 | 11/06/13 | 87 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Rainsford, Mary | 925-932-3500 | 04/09/10 | 12/03/10 | 238 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Rauch, Dolores | 925-407-6273 | 12/06/10 | 09/21/12 | 655 Alive, Prognosis Ext | End Stage Congestive Heart Failure |
| Reid, Rose | 925-933-2636 | 07/02/10 | 12/27/10 | 178 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Rich, Evelyn | 925-954-7253 | 01/27/14 | 04/23/14 | 86 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Rider, Virginia | 925-479-9985 | 12/24/11 | 10/17/12 | 298 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Rios, Margaret | 925-280-9975 | 12/05/14 | 01/26/16 | 417 Alive, Prognosis Ext | Alzheimer's disease, unspecified |
| Roberts, Charles | 925-933-5555 | 03/23/12 | 09/18/12 | 179 Alive, Prognosis Ext | Adult Failure To Thrive |
| Rodrigues, Maria | 925-284-5201 | 07/10/13 | 02/22/16 | 957 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Seasholtz, Betty | 925-682-7582 | 10/31/11 | 04/27/12 | 179 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Seeley, Lorraine | 925-833-1179 | 12/11/15 | 02/03/16 | 54 Alive, Prognosis Ext | Heart disease, unspecified |
| Slaats, Cornelis | 925-954-7206 | 07/27/11 | 03/15/13 | 597 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Smith, George | 925-943-5087 | 08/31/15 | 02/23/16 | 176 Alive, Prognosis Ext | Atherosclerotic heart disease of na |

| Patient Name | Home Phone | Admit Date | D/C Date | LOS Qualifier | Diagnosis |
|---|---|---|---|---|---|
| 'rogram: 91 | | | | | |
| **Team: 255** | | | | | |
| Sohigian, Michael | 925-849-6061 | 05/14/15 | 03/28/16 | 319 Alive, Prognosis Ext | Parkinson's disease |
| Stephens , Matilda | 925-876-3719 | 12/28/15 | 03/14/16 | 77 Alive, Prognosis Ext | Chronic obstructive pulmonary disea |
| Stewart, Cynthia | 925-938-0200 | 12/31/12 | 10/24/13 | 297 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Stohrer, Timothy | 925-945-8793 | 07/20/15 | 10/16/15 | 88 Alive, Prognosis Ext | Huntington's disease |
| Stolowitz, Laura | 925-939-7279 | 10/30/13 | 06/25/14 | 238 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| Stolowitz, Laura | 925-305-7391 | 02/02/15 | 04/02/15 | 59 Alive, Prognosis Ext | End Stage Alzheimer's Disease |
| Sybrandy, Hilje | 925-478-8881 | 12/20/15 | 03/14/16 | 85 Alive, Prognosis Ext | Other Alzheimer's disease |
| Tavares, Virginia | 925-586-0588 | 01/28/15 | 09/24/15 | 239 Alive, Prognosis Ext | Multiple sclerosis |
| Thomas, Melva | 415-935-1811 | 03/03/14 | 02/17/15 | 351 Alive, Prognosis Ext | End Stage Chronic Renal Disease |
| Thornburg, Jean | 925-935-1785 | 06/08/12 | 01/23/15 | 959 Alive, Prognosis Ext | Cerebral Atherosclerosis |
| Trudeau, Patricia | 925-357-8061 | 07/17/15 | 01/12/16 | 179 Alive, Prognosis Ext | Nontraumatic subdural hemorrhage, u |
| Walker, Marcella | 925-932-8512 | 09/23/10 | 09/10/12 | 718 Alive, Prognosis Ext | Cerebrovascular Disease, unspecifie |
| Wallis, Cecilia | 925-743-1146 | 03/16/12 | 01/24/13 | 314 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Wee, Leong | 925-837-0521 | 04/15/16 | 07/05/16 | 81 Alive, Prognosis Ext | Heart disease, unspecified |
| Wilcox, Jean | 925-937-6524 | 04/25/14 | 06/17/15 | 418 Alive, Prognosis Ext | Heart Disease, Unspecified |
| Wong, Ruby | 925-330-7554 | 07/18/14 | 09/19/14 | 63 Alive, Prognosis Ext | Neoplasm of the mouth, unspecified |
| Working, Roger | 925-828-6244 | 05/21/14 | 01/15/15 | 239 Alive, Prognosis Ext | End Stage Chronic Renal Disease |
| Yoshimura, Yukiko | 925-689-8831 | 06/16/11 | 08/07/12 | 418 Alive, Prognosis Ext | Vascular dementia (Multi Infarct) |
| **Team: 256** | | | | | |
| Alcazar, Eudelia | 209-464-7913 | 05/05/14 | 08/26/15 | 478 Alive, Prognosis Ext | Chronic Obstructive Pulmonary Disea |
| Altes, Edward | 209-467-4659 | 03/11/14 | 06/14/14 | 95 Alive, Prognosis Ext | Malignant Neoplasm of kidney, excep |
| Bhakta, Laxmiben | 209-334-3303 | 12/20/15 | 03/18/16 | 89 Alive, Prognosis Ext | Heart failure, unspecified |
| Cheng, Chi | 209-712-9546 | 09/26/12 | 12/24/12 | 89 Alive, Prognosis Ext | Head Trauma Due to Motor Vehicle Co |
| Chroeun, Chry | 209-475-1675 | 04/29/15 | 04/22/16 | 359 Alive, Prognosis Ext | Hereditary ataxia, unspecified |
| Costa, Mary | 209-466-3522 | 05/01/13 | 10/07/13 | 159 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Dorn Griffey , Louise | 925-513-4760 | 12/13/12 | 06/07/13 | 176 Alive, Prognosis Ext | Cerebral Degeneration (Dementia) Un |
| Falcon, Josephine | 925-339-2509 | 12/07/13 | 06/14/16 | 920 Alive, Prognosis Ext | Malignant neoplasm of cervix uteri, |
| Fowler, Francis | 209-823-0164 | 07/11/14 | 04/30/16 | 659 Alive, Prognosis Ext | Heart disease, unspecified |
| Hoscheid, Lawrence | 209-814-9042 | 03/13/13 | 07/10/13 | 119 Alive, Prognosis Ext | Pulmonary Fibrosis (Idiopathic Fibr |
| Kates, Elaine | 209-956-3401 | 03/01/16 | 05/27/16 | 87 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| McCrary, Robert | 209-956-3400 | 02/26/15 | 04/19/16 | 418 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Morimoto, Keiso | 209-368-6569 | 05/14/13 | 08/09/13 | 87 Alive, Prognosis Ext | Amyotrophic Lateral Sclerosis (ALS) |
| Purviance, Betty | 209-823-0164 | 10/05/14 | 04/02/15 | 179 Alive, Prognosis Ext | Acute Cerebrovascular Disease Inclu |
| Richter, Lorie | 209-263-7462 | 08/03/14 | 09/24/15 | 417 Alive, Prognosis Ext | Chronic obstructive pulmonary disea |
| Watson, Martha | 209-466-5341 | 05/28/14 | 02/19/16 | 632 Alive, Prognosis Ext | Cerebral atherosclerosis |
| Wendt, Barbara | 209-463-9100 | 11/22/14 | 09/16/15 | 298 Alive, Prognosis Ext | Atherosclerotic heart disease of na |
| Yarber , Bethene | 209-239-1222 | 03/07/13 | 09/03/13 | 180 Alive, Prognosis Ext | Cerebral Ataxia, Other Cerebral Deg |
| Zahl, Lila | 209-956-8677 | 09/19/12 | 03/17/13 | 179 Alive, Prognosis Ext | End Stage Alzheimer's Disease |

## Parameters

Begin Date: 01/01/10

End Date: 08/22/16

Program (Blank for all): 91

# EXHIBIT G

# NTUC Flash Report by Program

**Between 01/01/14 And 12/31/14**

| Program | Total NTUCs | % Not Appro | % Died Before Admit | % Refused | % Alt Place | % Cont Aggr Tx | % Pt Appr - Unable to Serv | % Non-Phys Ref | % Mgt Appro | % Info Only | % Travel Pt | % NTUC Conv-Adm | % NTUC Conv-Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 91-East Bay | 464 | 0 % | 11 % | 25 % | 7 % | 10 % | 0 % | 0 % | 0 % | 36 % | 0 % | 19 % | 0 % |
| **Report Summary** | **464** | **0 %** | **11 %** | **25 %** | **7 %** | **10 %** | **0 %** | **0 %** | **0 %** | **36 %** | **0 %** | | |


# NTUC Flash Report by Program

**Between 01/01/14 And 12/31/14**


## Parameters

Begin Date: 01/01/14

End Date: 12/31/14

Program (Blank for all): 91

# NTUC Flash Report by Program

Between 01/01/15 And 06/30/15

| Program | Total NTUCs | % Not Appro | % Died Before Admit | % Refused | % Alt Place | % Cont Aggr Tx | % Pt Appr - Unable to Serv | % Non-Phys Ref | % Mgt Appro | % Info Only | % Travel Pt | % NTUC Conv-Adm | % NTUC Conv-Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 91-East Bay | 304 | 0 % | 12 % | 23 % | 8 % | 12 % | 0 % | 0 % | 0 % | 33 % | 0 % | 18 % | 0 % |
| **Report Summary** | **304** | **0 %** | **12 %** | **23 %** | **8 %** | **12 %** | **0 %** | **0 %** | **0 %** | **33 %** | **0 %** | | |


# NTUC Flash Report by Program

Between 01/01/15 And 06/30/15


## Parameters

Begin Date: 01/01/15

End Date: 06/30/15

Program (Blank for all): 91

## NTUC Flash Report by Program

Between 01/01/16 And 06/30/16

| Program | Total NTUCs | % Not Appro | % Died Before Admit | % Refused | % Alt Place | % Cont Aggr Tx | % Pt Appr - Unable to Serv | % Non-Phys Ref | % Mgt Appro | % Info Only | % Travel Pt | % NTUC Conv-Adm | % NTUC Conv-Pending |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 91-East Bay | 303 | 12 % | 14 % | 20 % | 35 % | 14 % | 2 % | 0 % | 0 % | 6 % | 0 % | 17 % | 0 % |
| **Report Summary** | **303** | **12 %** | **14 %** | **20 %** | **35 %** | **14 %** | **2 %** | **0 %** | **0 %** | **6 %** | **0 %** | | |

## NTUC Flash Report by Program

Between 01/01/16 And 06/30/16

### Parameters

Begin Date: 01/01/16

End Date: 06/30/16

Program (Blank for all): 91

Bry
180 Gra
Oakland, CA 94612

7019 0700 0001 9746 2704

Vitas Healthcare Corporation of California
care of: corporation services company
2710 Gateway oak Drive
suite 150N
Sacramento, CA 95833

# Exhibit B

JOHN F. BAUM (SBN 148366)
CHINA WESTFALL (SBN 300982)
HIRSCHFELD KRAEMER LLP
456 Montgomery Street, Suite 2200
San Francisco, CA 94104-1255
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendant
VITAS HEALTHCARE CORPORATION OF CALIFORNIA

ENDORSED
FILED
ALAMEDA COUNTY

MAR 05 2020

CLERK OF THE SUPERIOR COURT
By JAMIE THOMAS, Deputy

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| THE STATE OF CALIFORNIA, ex rel ALMEA LUIS,<br><br>Plaintiffs,<br><br>vs.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,<br><br>Defendants. | Case No. RG17851533<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>Honorable Noël Wise<br>DEPARTMENT 24<br><br>**DEFENDANT VITAS HEALTHCARE CORPORATION OF CALIFORNIA'S ANSWER TO COMPLAINT** |
| ALMEA LUIS,<br><br>Plaintiff,<br><br>v.<br><br>VITAS HEALTHCARE CORPORATION OF CALIFORNIA; and VITAS HEALTH SERVICES OF CALIFORNIA, INC.,<br><br>Defendants. | |

Filed By Fax

Defendant VITAS HEALTHCARE CORPORATION OF CALIFORNIA, sued and served herein as Vitas Healthcare Corporation of California, a Delaware Corporation, ("Defendant"), hereby answers Plaintiff Almea Luis ("Plaintiff")'s Complaint for Damages ("Complaint") as follows:

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## GENERAL DENIAL

Pursuant to California Code of Civil Procedure section 431.30(d), Defendant generally denies each and every allegation contained in the Complaint. Defendant further denies that Plaintiff has been damaged in any sum or amount whatsoever, and denies that Plaintiff is entitled to any damages, punitive or otherwise, in any sum or amount whatsoever.

Defendant asserts the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

**(Failure to State a Claim)**

1. The Complaint, and each cause of action set forth therein, fails to state facts sufficient to constitute any cause of action, or to set forth a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

**(Waiver, Estoppel, Unclean Hands and Laches)**

2. The Complaint, and each cause of action set forth therein, is barred in that Plaintiff, by reason of her conduct and actions, is barred by the doctrines of estoppel, unclean hands, waiver and/or laches from asserting the claims set forth therein.

## THIRD AFFIRMATIVE DEFENSE

**(At-Will Employment)**

3. The Complaint, and each cause of action set forth therein, is barred because Plaintiff was, at all material times, an at-will employee of Defendant and, therefore, Plaintiff was subject to discharge at any time, with or without cause, so long as said discharge was not for an unlawful reason.

## FOURTH AFFIRMATIVE DEFENSE

**(Statute of Limitations)**

4. The Complaint, and each cause of action set forth therein, is barred in whole or in part by applicable statutes of limitations, including but not limited to California Code of Civil Procedure § 338, California Insurance Code § 1871.7, and California Government Code § 12653.

///

## FIFTH AFFIRMATIVE DEFENSE

**(Good Faith/Justification and Legitimate Business Necessity)**

5. Plaintiff's claims are barred, in whole or in part, because all decisions relating to Plaintiff's conduct were undertaken in good faith and without malice, were a just and proper exercise of management discretion, and were therefore privileged and/or done out of business necessity.

## SIXTH AFFIRMATIVE DEFENSE

**(Avoidable Consequences and Failure to Use Preventative Opportunities)**

6. Plaintiff's claims are barred, and/or her damages are limited, because Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant or to take reasonable precautions to avoid the purported harm alleged.

## SEVENTH AFFIRMATIVE DEFENSE

**(Failure to Mitigate)**

7. Plaintiff has failed to mitigate damages and, to the extent of such failure, any damages awarded to Plaintiff should be reduced accordingly.

## EIGHTH AFFIRMATIVE DEFENSE

**(Punitive Damages)**

8. Plaintiff's claim for punitive damages is barred because she has failed to plead facts sufficient to support allegations of malice, oppression or fraud, or of any ratification of any such acts by Defendant.

## NINTH AFFIRMATIVE DEFENSE

**(Fraud)**

9. Plaintiff has failed to plead fraud with the adequate degree of specificity and particularity as required by applicable statutory and/or common law.

## TENTH AFFIRMATIVE DEFENSE

**(Public Disclosure)**

10. The Complaint is precluded by the Public Disclosure bar of the False Claims Act.

## ELEVENTH AFFIRMATIVE DEFENSE

**(Knowledge of False Claims)**

11. The Complaint is barred because Defendant never knowingly presented a false or fraudulent claim for payment or approval.

## TWELFTH AFFIRMATIVE DEFENSE

**(False Record or Statement)**

12. The Complaint is barred because this Defendant never knowingly made, used or caused to be made or used, a false record or statement material to a false or fraudulent claim.

## THIRTEENTH AFFIRMATIVE DEFENSE

**(Right to Raise Additional Defenses)**

13. The Complaint fails to state the bases of the underlying claims made against Defendant with sufficient particularity so as to enable Defendant to determine all of its defenses thereto. Therefore, Defendant reserves the right to assert all applicable defenses to the Complaint once the specific bases of such claims are determined through discovery or otherwise.

## PRAYER FOR RELIEF

**WHEREFORE**, Defendant prays for judgment against Plaintiff as follows:

1. That Plaintiff takes nothing by her Complaint and that judgment be entered in favor of Defendant on each and every one of Plaintiff's causes of action;
2. That Defendant be awarded its costs of suit incurred herein;
3. That Defendant be awarded its reasonable attorneys' fees; and
4. For such other and further relief as this Court deems just and proper.

Dated: March 5, 2020

HIRSCHFELD KRAEMER LLP

China Westfall

John F. Baum
China Westfall
Attorneys for Defendant
VITAS HEALTHCARE CORPORATION OF CALIFORNIA

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*State of California, ex rel Almea Luis v. Vitas Healthcare Corporation of California*
**Alameda Superior Court Case No. RG17851533**

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 456 Montgomery Street, Suite 2200, San Francisco, California 94104-1255. On March 5, 2020, I served the following document(s) by the method indicated below:

**DEFENDANT VITAS HEALTHCARE CORPORATION OF CALIFORNIA'S ANSWER TO COMPLAINT**

☐ by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

***Attorneys for Plaintiff, Almea Luis:***

Bryan J. Schwartz, Esq.
Bryan Schwartz Law
180 Grand Ave., Suite 1380
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com

***Attorneys for State of California:***

Xavier Becerra, Esq.
Gerald A. Engler, Esq.
Saralyn M. Ang-Olson, Esq.
Vincent Dicarlo, Esq.
Jennifer S. Gregory, Esq.
Attorney General's Office
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
Telephone: (916) 621-1823
Facsimile: (916) 274-2929
E-mail: jennifer.gregory@doj.ca.gov

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 5, 2020, at San Francisco, California.

Julie Goodfield

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## CERTIFICATE OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO**

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 456 Montgomery Street, Suite 2200, San Francisco, California 94104-1255. On March 6, 2020, I served the following document(s) by the method indicated below:

**DECLARATION OF CHINA WESTFALL IN SUPPORT OF DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT UNDER 28 U.S.C. § 1441 (A)(B); 28 U.S.C. § 1332**

☐ by transmitting **via facsimile** on this date from fax number (415) 834-0443 the document(s) listed above to the fax number(s) set forth below. The transmission was completed before 5:00 p.m. and was reported complete and without error. Service by fax was made by agreement of the parties, confirmed in writing. The transmitting fax machine complies with Cal. R.Ct 2003(3).

☒ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

***Attorneys for Plaintiff, Almea Luis:***

Bryan J. Schwartz, Esq.
Bryan Schwartz Law
180 Grand Ave., Suite 1380
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com

***Attorneys for State of California:***

Xavier Becerra, Esq.
Gerald A. Engler, Esq.
Saralyn M. Ang-Olson, Esq.
Vincent Dicarlo, Esq.
Jennifer S. Gregory, Esq.
Attorney General's Office
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833
Telephone: (916) 621-1823
Facsimile: (916) 274-2929
E-mail: jennifer.gregory@doj.ca.gov

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on March 6, 2020, at San Francisco, California.

Julie Goodfield

Julie Goodfield

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO